DOWAGIAC MFG. CO. v. SMITH et al.

(Circuit Court, D. Minnesota, Fourth Division. April 12, 1901.)

PATENTS—INFRINGEMENT—GRAIN DRILLS.

The Hoyt patent, No. 446,230, for a grain drill, while only for a combination of old devices, is valid, in view of the superior merit and efficiency of the machine as a whole, and the inventor is entitled to the benefit of equivalents. Claims 1, 2, and 3 *held* infringed by a machine containing all the elements of the combination, or others, which, while variant in form, are clearly their mechanical equivalents.

In Equity. Suit for infringement of a patent. On final hearing.

Fred L. Chappell, for complainant.

Julius S. Starr and William V. Tefft, for defendants.

LOCHREN, District Judge. This is a bill in equity, wherein the complainant, the Dowagiac Manufacturing Company, owners by assignment from the patentee of letters patent No. 446,230, issued to Will F. Hoyt, February 10, 1891, for grain drill, charges the defendants, Ernest F. Smith and Luppo W. Zimmer, with infringement of said letters patent by the making, using, and vending to others of large numbers of grain drills having in their structure the combination of parts and devices which are covered and secured to said complainant by the said letters patent, and said assignment to it of the same: and charging that said defendants still continue such infringement, and praying for an injunction and accounting. Defendants, by their answer, contest the validity of said letters patent; deny that Hoyt was the original or first inventor of the grain drill described in said letters patent; and plead several prior patents and grain drills in use before Hoyt's alleged invention, as embodying and anticipating such alleged invention. On the hearing the complainant confined its charge of infringement to claims numbered 1, 2, and 3 of the Hoyt patent, which are as follows:

"(1) In combination with the transporting wheels and frame, the hopper, shoe, and draft rods, the latter having a pivotal connection with the frame; the clamping plates, having a pivotal connection with the draft rods; the spring-metal pressure rods attached to said plates, said rods extending rearwardly of the hopper; the forked arm coupled to said rods, and means for raising and lowering said arm,—substantially as specified. (2) In combination with the frame of a grain drill, the hopper, having a flange at the upper end; the shoe attached to the hopper; the curved draft rods leading from the shoe, and having a pivotal connection with the frame of the machine; a swinging head located between the upper ends of the draft rods; spring-metal rods attached to the swinging head, said rods extending back of the hopper, and below the flange thereof, said spring-metal rods being coupled to an arm, said arm having means for raising and lowering it, and means for locking the parts,—for the purposes set forth. (3) In combination with the frame, hopper, shoe, and draft rods, the plates pivotally attached between the upper portions of said draft rods, said plates having the horizontal shoulders, said shoulders bearing upon the draft rods; the spring-metal rods attached to said plates, and passing rearward of and on opposite faces of the hopper, and means for applying pressure to the rear ends of said spring-metal rods,— for the purpose specified."

Drawings showing this patented combination appear in 41 C. C. A. 627, 101 Fed. 718, in the report of the case of McSherry Mfg. Co. v. Dowagiac Mfg. Co. The question of the validity of the Hoyt patent is not a difficult one. Although it is only for a combination of old devices,—for the clamping plates or swinging head, even if new, is not patented, and therefore is, as a separate device, free to the public, —and although the patented combination produces only old results in the old way, yet, when compared with the older styles of shoe drills, it possesses the advantages of lightness, greater convenience in moving from field to field, superior attractiveness in appearance, with little liability to get out of repair, and its long, light, flexible springs adapt it better to uneven surfaces. It has met with very favorable reception and large sales, and, for the reasons suggested, the main features of the combination have been extensively copied and appropriated by other manufacturers of seed drills. I think that patentable novelty cannot be denied to this combination, and I therefore hold that the patent is valid. In the McSherry Case, above referred to, its validity was sustained, and seems to have been in fact conceded.

The question of the alleged infringement by the defendants is the serious and difficult question in the case. The shoe drills which have been sold and are being sold by defendants, and which the complainant claims infringe the Hoyt patent, are manufactured by Selby, Starr & Co., of Peoria, Ill., and spoken of in the testimony as the "Peoria Seeder," which bears a close resemblance in its general appearance and in the details of its devices and combination to the machine of the Hoyt patent, as shown in the drawings and described in the first three claims of that patent; and it performs the same functions in the same way. All the combined elements and devices are the same, with immaterial variations in mere matters of form, except that the defendants assert that there are absent from the Peoria seeder, dealt in by them, two of the elements of the Hoyt patent set forth in each of its first three claims. They assert that in the Peoria seeder the connection between the springs and the draw-

bars is not a pivotal, but a rigid, connection,—as rigid as if they were solidly welded, bolted, or brazed together at their junction; and, secondly, that the Peoria seeder has no clamping plates or swinging head, nor any mechanical equivalent for the same. In the Peoria seeder, dealt in by the defendants, the springs, which are flattened, and not round, as shown in the Hoyt patent, are separate springs, each extending from the bifurcated arm in the rear of the hopper forward, close by the sides of the hopper, and under its flange, which they engage when raised, to a direct connection with the forward part of the curved drawbars, where they are so connected by being bent downward between the drawbars, and over and partially around an iron pin or bolt which passes through the drawbars; and the ends of the springs are thence carried downward and backward about five inches between the drawbars, the ends passing over, and being bent or hooked partly around, another similar bolt, which also passes through the drawbars. Between these two bolts and between the drawbars is a cast-iron plate or spacer, fitted to its surroundings, to keep the drawbars and springs in proper place with reference to each other; and thus the forward ends of the springs are held in place, and in connection with the forward ends of the drawbars in proper position to transmit to the drawbars any pressure applied to the rear end of the springs, while the raising of the springs at the rear causes them to engage the flange or lugs on the hopper, and lift the shoe from the ground when desired. Although the pivotal movement of the springs upon the forward bolt where they thus engage the drawbars may be very slight, I think there is, and from the construction must be, some pivotal movement there in the application and withdrawal of pressure upon the rear end of the springs, as the same flexible springs extend over and beyond that bolt downward to the other bolt at the end of the springs. Were the distance between these two bolts considerably greater than it is, I think such pivotal motion would be easily observable; and that, slight as it is, it has value in distributing strain which might bear more on a single point if the connection were rigid.

It remains to be considered whether the Peoria seeder has the clamping plates which are described in each of the three first claims of the Hoyt patent, or any mechanical equivalent for the same. No question is made but that the "clamping plates" described in the first claim, and the "swinging head" described in the second claim, and the "plates pivotally attached between the upper portions of said draft rods" described in the third claim, all refer to the same identical device. Its connections, as stated in each of these claims, show it to be the same; and its construction, functions, and uses appear in the drawings and specifications. The clamping plates form an essential element of Hoyt's invention as described in his patent. The second paragraph of the specifications refers to the claims as pointing out the essential features of the invention, and such is the office of claims, without such reference. Each of the three first claims, and, indeed, every claim in the patent except the fourth, describes the clamping plates as devices entering into the combination. This device cannot be overlooked, nor can the court declare it to be imma-

terial. Fay v. Gordesman, 109 U. S. 408, 420, 421, 3 Sup. Ct. 236, 27 L. Ed. 979. Besides, if that element or device were omitted, and no equivalent supplied in its place, it is obvious that the combination would be inoperative. "It is a well-known doctrine of patent law that the claim of a combination is not infringed if any of the material parts of that combination are omitted. It is equally well known that, if any one of the parts is only formally omitted, and is supplied by a mechanical equivalent, performing the same office, and producing the same result, the patent is infringed." Water-Meter Co. v. Desper, 101 U. S. 332, 335, 25 L. Ed. 1024, 1025. "Such inventors [of combinations] may claim equivalents as well as any other class of inventors, and they have the same right to suppress every other subsequent improvement not substantially different from what they have invented and secured by letters patent." Gould v. Rees, 15 Wall. 187, 192, 21 L. Ed. 39, 41. As the defendants' machine, the Peoria seeder, has no device in form like the clamping plates of the Hoyt patent, it is necessary to consider whether it has the mechanical equivalents of that device, performing the same office and function, and producing the same result in substantially the same way. The function and office of the clamping plates appears to be three-fold. This device serves to hold in proper space relation to each other the two drawbars and the forward ends of the long springs. It connects the springs pivotally upon the bolt which passes through the drawbars, and it includes the device bearing upon the drawbars, by means of which pressure upon the springs is applied to the drawbars to depress the shoe. The iron casting used in the Peoria seeder at the same place in the machine holds in proper space relation to each other the two drawbars and the forward ends of the springs, substantially the same as do the clamping plates of the Hoyt patent. The springs in the Peoria seeder pass over this casting to a direct pivotal connection with the bolt through the drawbars, which is substantially and mechanically the same thing as the connection of the springs in the Hoyt patent with the clamping plates, the eyes in the forward part of which are passed through by the same bolt, thus giving the same pivotal connection of the springs with the drawbars. The result is the same in both cases. Neat as the clamping plates are in appearance, and doubtless efficient in service, their adoption to extend the springs to the pivotal connection with the bolt through the drawbars seems as unnecessary, and apparently as objectionable, as it would be to splice a wooden lever at the point where the strain is perhaps greatest. But, even in that case, the substitution of an unspliced lever made of a single entire stick, instead of such spliced lever, would be a plain change to a mechanical equivalent, though the substitute might be stronger, simpler, and better. So the looping of the ends of the springs over the second bolt in the Peoria seeder, to check their pivotal movement over the forward bolt, and obtain the pressure of the springs upon the drawbars, is the mechanical equivalent of the lugs on the sides of the clamping plates which in the Hoyt patent impart the spring pressure to the drawbars in the same way. The variation in respect to these matters is in the form of the devices merely, and is of no more importance, mechanically considered, than

the variation between the round springs of the Hoyt patent and the flat springs of the Peoria seeder. As I understand the opinion of the court of appeals in the McSherry Case, above referred to, it is in harmony with my holding in this case. What was there intended and meant by the statement that "the clamping plates of Hoyt's patent are not of the essence or substance of his invention" is shown by the restatement of the matter on the next page:

"The form he describes and claims is not of the essence of his invention, and the law allows a patentee any form which is the equivalent of that claimed, unless he has expressly limited himself to the one specific form in order to save his patent from anticipation."

I therefore hold the defendants guilty of infringement, and there must be a decree in favor of the complainant and against the defendants for an accounting and injunction as prayed, and for costs. The form of the decree, unless agreed to by counsel, may be settled upon five days' notice.