STEARNS–ROGER MFG. CO. v. RUTH.*

No. 1348.

Circuit Court of Appeals, Tenth Circuit.

Oct. 14, 1935.

See also (C. C. A.) 62 F.(2d) 442.

Forrest C. Northcutt and Jesse G. Northcutt, both of Denver, Colo., for petitioner.

Max Melville, of Denver, Colo., for respondent.

Before LEWIS and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

The bill to be filed, application for which is made, is in the case of Joseph P. Ruth, Jr., plaintiff, v. Stearns-Roger Manufacturing Company, a corporation, defendant, in

*Rehearing denied Nov. 18, 1935.

the District Court for the District of Colorado. That is a patent infringement suit. Ruth as the owner of letters patent No. 1,277,750, issued to Pearce September 3, 1918, sued the corporation, and on final hearing the District Court on June 18, 1931, made findings of fact as follows:

"5. That the apparatus made and sold by the defendant is represented in drawing sheet No. 4965 annexed to defendant's answer to interrogatories filed by the plaintiff.

"6. That the apparatus so manufactured and sold by the defendant does not infringe upon claims 1 and 3 of said Patent No. 1,-277,750 unless it is capable of being operated under normal and average conditions without employing the sands outlet."

This is followed by the court's conclusions of law.

"3. That claims 1 and 3 of Patent No. 1,277,750 are good and valid in law.

"4. That the apparatus represented in drawing sheet No. 4965 is capable of infringing and does infringe Claims 1 and 3 of said Patent No. 1,277,750."

Thereafter on July 2, 1931, the court entered its decree in favor of Ruth. The decree refers to the findings of fact and conclusions of law, and upon consideration thereof it enjoined the corporation from further infringement in manufacturing, using, or selling any apparatus of the kind theretofore manufactured and sold by defendant exemplified in said drawing sheet No. 4965 annexed to defendant's answers to plaintiff's interrogatories; that plaintiff recover from defendant the profits and gains which it had received by reason of past infringements of claims 1 and 3 of plaintiff's patent; and that the case be referred to a special master for an accounting. An appeal was taken to this court from the decree, and we affirmed. Stearns-Roger Mfg. Co. v. Ruth (C. C. A.) 62 F. (2d) 442. Thereupon the master was appointed, and he proceeded with the accounting, which has been completed. He took much testimony, confining it to apparatus or machines sold by defendant, which it had made in keeping with drawing sheet No. 4965, and parts made and sold as repairs to said machines. Said drawings displayed the sands outlets, and the machines were so manufactured.

Respondent opposes our granting permission to file the bill. It rests upon two alleged grounds: First. That the interlocutory decree is vague, ambiguous, indefinite,

and uncertain in that it does not clearly appear whether Ruth was to be awarded the profits received by the corporation in the sale of machines and parts therefor that were equipped with sands outlets through which a substantial portion of the tailings are discharged; that petitioner did not discover until June 29, 1935, the ambiguity, indefiniteness, and uncertainty in said interlocutory decree in that it does not appear therefrom whether the machines manufactured and sold by petitioner were equipped with sands outlets through which a large amount of tailings are discharged. Second. That Stearns-Roger Manufacturing Company has discovered since the filing of our mandate in the District Court new evidence material to the case, viz.: In the spring of 1933 Ruth served notices of infringement on petitioner's · customers: that said customers thereafter caused tests to be made on the flotation machines sold by petitioner to them as to the amount and quantity of tailings that were discharged through the sands outlet in practical and commercial operation of the machines; that said tests showed that from 50 to 85 per cent. of tailings were discharged through the sands outlet. The dates of those tests are not given. It is alleged that subsequent to the dates of tests made by said customers, petitioner has itself caused tests and calculations to be made to determine the amount of tailings that were discharged through the sands outlet, and those tests show, as did the customers', 50 to 85 per cent.; that said sands outlet are essential in the commercial operation of the machines and reduces the cost; and that such evidence could not have been sooner discovered by the exercise of reasonable diligence.

■ It may be doubted whether the first ground stated rests solely on ambiguity and uncertainty in the decree. It seems rather a mingling of the two grounds. But, however that may be, the decree of the District Court as originally entered does not control. The mandate of this court in the light of our opinion on the appeal is the guide, and from that view we think no uncertainty can be found. The machine patented to Pearce and owned by Ruth, which was adjudged to be infringed as to claims 1 and 3, is shown in the drawing on page 443 of 62 F.(2d). It is observed that the froth or foam carrying mineral is discharged at the upper right-hand corner of the compartment and the tailings at a slightly lower level immediately to the left thereof. The infringing device is shown in 62 F.(2d) 443, at page 447. The froth overflows at the upper right-hand corner also, whereas the tailings pass through the opening at figure 1 at a much lower level than the froth overflow and are then carried upward over the top of the weir which is slightly lower than the froth overflow, the weir being shown at figure 3. At figure 2 the infringing machine had what is designated as sands outlet at the lower end of the weir. In column one in 62 F.(2d) 443, on page 448 of our opinion we observed that the Stearns-Roger Company contended, "that the heavier tailings pass out through the sands discharge opening 2." In column two· on that page, after noting amendments of claims in the Pearce patent in the patent proceedings and their effect, we said: "We are of the opinion that these amendments so narrowed the claims that the inclusion of the sands hole 2 in the alleged infringing device would avoid infringement if it were essential to the operation of the device and if it were employed in the commercial use of the device. * * * However, the evidence established, and the trial court found, that the sands discharge was not necessary to a proper functioning of the device, and that in the use of the commercial device this hole was kept closed."

. Further on we said: "The sands hole, as compared with the opening over the weir, is very small and only a slight and insignificant amount of tailings will escape through the sands hole, as compared with the amount which will pass over the weir. * * * We conclude that the sands hole effects a slight change in efficiency alone, that it is not essential to the device, and that, notwithstanding it, the alleged infringing device employs the principle and appropriates the substance of the patent."

There can be no doubt as to what was adjudicated on that appeal, and the first ground set up in the proposed bill is clearly without merit.

■ Furthermore, and with reference to the second ground, it is observed that the utility of the sands outlet, its purpose, and the service it was intended to render in the combination was in issue at the trial in the District Court. Expert witnesses gave testimony on the subject. Wilkinson and Littleford, patentees of a flotation machine subsequent in application and issuance to the Pearce patent owned by Ruth, are supposed to be the discoverers of the sands outlet. · Of it they said in their specifica-

tions: "When operating on pulps carrying heavy sands or large particles, it may be desirable in some instances to provide a by-pass such as the orifice 55 (sands outlet) in the partition 36 (the weir), to allow a portion of the pulp containing the heavy or large particles of said pulp to flow directly from the upflow conduit to the downflow conduit, thus avoiding the necessity of carrying said particles over the weir and also preventing any obstruction due to settling in the upflow conduit. This orifice 55 may be conveniently located opposite the rectangular outlet 15. Ordinarily, however, this orifice will be closed by the plug, as shown."

This Wilkinson and Littleford patent belongs to Mineral Separation North American Corporation, and it drew the plans and sent them to its licensee, the Stearns-Roger Manufacturing Company, from which infringing machines were made. Mr. Wilkinson is an employee of the North American corporation and has been such for over 20 years. He testified in this case and bore out the above excerpts from the specifications of his patent. Other witnesses testified concerning the sands outlet. The subject was discussed in the briefs on appeal in this court.

In Southard v. Russell, 16 How. 547, 568, 569, 14 L. Ed. 1052, the Supreme Court approved the rule pronounced by Chancellor Kent:

"The rule, as laid down by Chancellor Kent ([Livingston v. Hubbs], 3 Johns. Ch. [N. Y.] 124), is, that newly discovered evidence, which goes to impeach the character of witnesses examined in the original suit, or the discovery of cumulative witnesses to a litigated fact, is not sufficient. It must be different, and of a very decided and controlling character. [Brewer v. Bowman], 3 J. J. Marsh. (Ky.) 492 [20 Am. Dec. 158]; 6 Madd., 127; Story, Eq. Pl. § 413.

"The soundness of this rule is too apparent to require argument, for, if otherwise, there would scarcely be an end to litigation in chancery cases, and a temptation would be held out to tamper with witnesses for the purpose of supplying defects of proof in the original cause."

In Purcell v. Miner, 4 Wall. 519, 521, 18 L. Ed. 459, the court said: "Suffice it to say that the petitioner has not presented a single feature of a case within the rules. He offers no new evidence, but what he might as well have produced before, and which, if it had been produced, would not have justified a decree in his favor."

In Beard v. Burts, 95 U. S. 434, 436, 24 L. Ed. 485: "The facts are not open for a re-trial, unless the bill asserts that new evidence has been discovered, not obtainable before the first trial by the exercise of reasonable diligence."

Cooper's Equity Pleading, page 91, in discussing Lord Bacon's rule relative to newly discovered evidence says this: "And if there has been anything like mere forgetfulness or negligence in parties under no incapacity, it will not do. And it must appear, that the new matter has come materially and substantially to the knowledge of the party or his agents, which is the same thing, since the time of the decree in the former cause, or since such time as he could have used it to his benefit and advantage in the former cause."

Judge Walter H. Sanborn, speaking for the Court of Appeals in Hill v. Phelps, 101 F. 650, 652, said this as to newly discovered evidence to sustain a bill of the sort we have here: "The newly-discovered evidence which may form the basis of such a review must be, not only evidence which was not known, but also such as could not, with reasonable diligence, have been found before the decree was made." See, also Continental Oil Co. v. Osage Oil & Refining Co. (C. C. A.) 69 F.(2d) 19, 24; Swift v. Parmenter (C. C. A.) 22 F.(2d) 142; Rothschild & Co. v. Marshall (C. C. A.) 51 F.(2d) 897.

Harvey Mathews, an employee of Stearns-Roger Company for many years, verified the tendered bill. In his verification he says on oath that he is a graduate of the Colorado School of Mines with the degree of Engineer of Mines, 1913; that between his graduation in 1913 and 1922 he was continuously employed in mills which treated ores in various capacities, at times as general superintendent; that since 1922 to the present time he has had complete charge of the installation of the machines sold by Stearns-Roger; that he saw 11 machines (of the 14 which the master found infringed) when they were ready for shipment and had observed several of them in use and in operation; that it was not practical to operate them without keeping the sands hole open, and that it has always been the custom and practice to use the sands hole in operation. He was a witness for defendant at the trial. He was petitioner's sales engineer, and it cannot be

believed that he did not know at the trial the extent of use and the materiality of the sands outlet at that time, or the immediate necessity of then ascertaining the claimed new facts as to tests for that purpose. His knowledge in that respect is attributable to his employer. Cooper's Equity Pleading, supra. The same comments may be made as to Arthur J. Weinig, who also verified the tendered bill, and who is also a graduate of the Colorado School of Mines in 1908, and who was also in the employ of Stearns-Roger at the time of these sales.

With these experts at hand, the progress of the trial relative to the sands outlet would have alone suggested the immediate development of tests. We are therefore unable to accept the contention that the tendered bill is within the rule as to this ground. The application to file is denied.