## SHELLMAR PRODUCTS CO. v. ALLEN–QUALLEY CO. et al.

### No. 6007.

Circuit Court of Appeals, Seventh Circuit.
Dec. 16, 1936.

Rehearing Denied Jan. 27, 1937.

Franklin M. Warden and John C. Slade, both of Chicago, Ill., for appellant.

George I. Haight and M. K. Hobbs, both of Chicago, Ill., and Louis Quarles, of Milwaukee Wis., for appellees.

Before SPARKS and ALSCHULER, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

For want of equity, the District Court dismissed appellant's bill of review to modify a decree entered by it on April 10, 1929, Allen-Qualley Company v. Shellmar Products Company, 31 F.(2d) 293, which was affirmed by this court, Shellmar Products

Co. v. Allen-Qualley Co., 36 F.(2d) 623. The bill sought to modify that part of the decree which enjoined appellant, the defendant in the original action, from making, using or selling a certain type of wrap for food products such as candy bars, and from using, revealing or making known the processes and machinery used in its manufacture. The wrap, the machine, the essential feature of the process, and the decree, together with the circumstances under which it was entered, are fully set forth in the opinions hereinbefore referred to.

It is contended by appellant that this record discloses that everything which the court originally held to be the secret invention of Allen-Qualley was disclosed to the world through United States patents to Royal, No. 1,814,967, and to Novick, No. 1,865,037, and British patent to Robinson, No. 313,423, the last being applied for and issued in behalf of Royal. It is asserted by appellant that these patents, although not published until after the original decree of April 10, 1929, was entered, were granted for inventions made prior to the date of Allen-Qualley's invention. Hence, appellant argues that Allen-Qualley's right of secrecy was extinguished by the disclosures of the patents referred to, and that equity will not continue injunctive relief to protect a right of secrecy which no longer exists. It may be conceded that the three patents relied upon by appellant fully disclose the Allen-Qualley product and process, and the Royal and Robinson patents also disclose the Allen-Qualley apparatus.

At the original trial, appellant, in an effort to show that Allen-Qualley had no secret which could be considered as the basis for a confidential relationship, presented evidence that the process involved had already been published. That evidence included the public practice, in April or May, 1929, at the plant of Thomas M. Royal and Company in Philadelphia; the sale of wraps, made in accordance with Allen-Qualley's teachings, by the Milwaukee Printing Company, a licensee of Allen-Qualley, now the Milprint Products Corporation; the Olsen patent, No. 1,640,-052, issued August 23, 1927, on an application filed December 21, 1925, and purchased by appellant before the original trial without the knowledge of Allen-Qualley; and the Cameron Slitting and Rewinding Machine, claimed to have been used by appellant in making a continuous web from which "Revelation" wraps were cut. The original decree awarded an accounting for damages; enjoined appellant as stated; and ordered an assignment of the Olsen patent to Allen-Qualley upon its reimbursing appellant for the amount paid by the latter for the patent. The damages subsequently were agreed upon and paid, and the patent was assigned pursuant to the decree. On July 17, 1931, the District Court, pursuant to the settlement of damages and the assignment, entered an order declaring and adjudging the decree of April 10, 1929, to have been satisfied in full, except as to the injunction which was ordered to remain in force.

On February 27, 1928, prior to the original decree, Olm and Mair, who were Allen-Qualley's employees, filed their application for a patent covering the secret process here involved for the Revelation wrap, as it is called, which was designed by them in the early part of 1927. This application was assigned to Allen-Qualley. It came into interference with the application of Royal, so far as claims relating to bags formed of the composite wrapping material were concerned, and priority was conceded to Royal of all subject matter common to the interfering applications. No United States patent has been granted on the Olm and Mair application, but a Canadian patent, No. 291,371, was granted thereon to Allen-Qualley on July 16, 1929, on its application filed on September 17, 1928.

Prior to the original trial, and before the taking of testimony began, appellant had secured the issuance of Canadian patent, No. 283,944, to Miller, its employee, and it was reissued in 1933. Both fully disclose the process here involved, and the applications were based on the confidential information received by appellant from Allen-Qualley. Furthermore, before the original trial, appellant, through Olsen, Jr., filed application for a Canadian patent corresponding to the United States patent to Olsen, referred to in the original decree. That application resulted in the issuance of Canadian Letters Patent, No. 297,343, to appellant on February 4, 1930. The facts with relation to the application and issuance of these two Canadian patents were not known to the District Court when the original decree was entered.

For convenience, a chronological list of pertinent facts is set forth in the margin.[1]

For the purpose of protecting their interests, the appellees Ramco, Inc., and Milprint Products Corporation, by leave of court, intervened as co-parties with Allen-Qualley in the proceedings to review. Ramco, Inc., asserted that the interests of Allen-Qualley in the Revelation wraps, and the inventions, processes, patents and patent applications relating thereto, and the interests of Thomas M. Royal and Company in the Revelation bags and the inventions, processes, patents, and patent applications relating thereto, were assigned to Royal-Allen-Mair, Inc., and were subsequently assigned in June, 1935, by the latter corporation to Ramco, Inc.

Ramco, Inc., was created to consolidate the interests of Thomas M. Royal and Company, assignee of Royal, Allen-Qualley, Continental Paper and Bag Corporation, and Royal-Allen-Mair, Inc., in and to the patents, inventions and processes relating to the art of fabricated wrappers. It is now the owner of the Olm and Mair application of February 27, 1928, the Royal patent and the Olsen patent, and holds an exclusive license under Novick.

Milprint asserted that it was the exclusive licensee of Allen-Qualley, and its assignee of the right to make, use and sell the Revelation wrap; that Royal-Allen-Mair, Inc., as assignee of Allen-Qualley's right, title and interest to royalties under the license, entered into an amended license

---

[1]

1925 Dec. 21 U. S. Olsen patent application filed.

1927 Aug. 23 U. S. Olsen patent No. 1,640,052 issued.

" Sept. 19 Novick patent application filed.

" Dec. 14 Shellmar bought Olsen U. S. patent.

1928 Feb. 2 Miller Canadian patent application filed by Shellmar.

" Feb. 11 Robinson Canadian application filed by Royal.

" Feb. 27 Olm and Mair U. S. application filed by Allen-Qualley.

" Mar. 21 Olsen Canadian application filed by Shellmar.

" March Shellmar puts candy bar wrapper, marked with Olsen patent, on the market.

" Apr. 11 Royal U. S. application filed.

" May 14 Allen-Qualley filed original action.

" Sept. 17 Olm and Mair application filed in Canada by Allen-Qualley.

" Oct. 9 Miller Canadian patent No. 283,944 issued to Shellmar.

1929 Apr. 10 Interlocutory decree entered in original action.

" June 11 Robinson Canadian patent No. 313,423 accepted.

" July 16 Olm and Mair Canadian patent No. 291,371 issued to Allen-Qualley.

" July 23 Robinson Canadian patent filed in U. S. Patent Office.

1929 Dec. 24 This court affirms interlocutory decree of District Court.

1930 Feb. 4 Olsen Canadian patent No. 297,343 issued to Shellmar.

" June 3 Declaration of interference between Olm and Mair, and Royal.

" June 30 Mandate of this court filed.

1931 June 12 Concession of priority of Olm and Mair to Royal on bags, filed in U. S. Patent Office.

" July 14 U. S. Royal patent No. 1,814,967 issued to Royal - Allen - Mair Company.

" July 17 Final decree entered in this suit adjudging the interlocutory decree to have been satisfied in full, except as to the injunction, which was continued in force.

" Sept. 7 Term of District Court expired.

1932 May Shellmar learns of Canadian and United States Royal patents.

" June 28 Novick patent issued.

1933 Sept. 5 Miller Canadian patent reissued as No. 335,-489 to Shellmar.

" Nov. 29 Shellmar petitions this court for leave to file bill of review in the District Court.

1935 May Ramco, Inc., takes title to patents and inventions of Allen-Qualley.

agreement continuing the exclusive license to Milprint, and that it was subsequently assigned by Milprint to Ramco, Inc.

Allen-Qualley filed its answer and counterclaim, demanding that appellant be required to assign to it the Miller and Olsen Canadian patents. That answer and counterclaim were ordered filed as and for the answer and counterclaim of all the appellees. The District Court held that the new facts presented on review were merely cumulative of evidence offered at the original trial, and that because of appellant's breach of the confidential relations, it was not entitled to relief from the injunction, regardless of the public disclosure of Allen-Qualley's secret by the subsequently issued patents. The decree further ordered appellant to assign the Miller and Olsen Canadian patents to Allen-Qualley.

It is clear that appellant's claim for relief against the injunctive decree is based upon the well-recognized principle that equity will dissolve an injunction when there is no longer a basis for it; or expressed more narrowly, an injunction issued to protect a right will be dissolved upon the extinguishment of that right. These principles are not here denied, and the question presented for solution is whether the basis for the injunction lawfully issued still exists, or has the right once established been extinguished.

In support of its contention that Allen-Qualley's right to the injunction has been extinguished, appellant relies upon the general principle that the issuance of a patent extinguishes all rights of secrecy in the subject matter disclosed in the patent. Its theory is constructed upon the assumption that the original decree was based upon the conclusion that the wrap, process and machine were first invented by Allen-Qualley, and were secrets of which no one other than it had any knowledge. That assumption is erroneous. The findings upon which the original decree was based were that the wrap, process and machine were Allen-Qualley's trade secrets; that they had been disclosed to appellant in confidence; and that it had violated that confidence by manufacturing and selling the wrap without Allen-Qualley's authority, after negotiations for a co-operative arrangement had failed.

The District Court's opinion in the original case clearly and correctly set forth the distinction between rights under unpatented secret processes and those under patents, as follows [31 F.(2d) 293, 296]:

"The difference between secret processes and patents is that the owner of a patent has a monopoly against all the world, while the owner of a secret process has no right 'except against those who have contracted, expressly or by implication, not to disclose the secret, or who have obtained it by unfair means.' * * * The jurisdiction of equity to protect such trade secrets is founded upon trust or confidence. The court 'fastens the obligation upon the conscience of the party, and enforces it against him in the same manner as it enforces against a party to whom a benefit is given, the obligations of performing a promise on the faith of which the benefit has been conferred.' * * * Whether the subject-matter is patentable or not, if the designer discovers and keeps secret a process of manufacture, though he will not have an exclusive right to it as against the public, after he shall have published it, or against those who in good faith acquire knowledge of it, yet he has a property right, which a court of chancery will protect against one who in bad faith and breach of confidence undertakes to apply it to his own use. [Cases cited.]"

The findings of the court in the original action placed appellant in the precise situation described in the quotation, and it was enjoined because of its bad faith in breaching the confidence which Allen-Qualley had placed in it. This was done notwithstanding the conceded and pleaded disclosures of Olsen, Royal's public practice, the Cameron machine of appellant, and the disclosure of Allen-Qualley to its licensee.

The Olsen United States patent was issued prior to Allen-Qualley's confidential disclosure to appellant, and its application was filed long before Allen-Qualley had designed its wrap or filed its application for a patent, and yet the court protected the confidential communication, because appellant by its inequitable conduct had taken itself outside the pale of the general public to which the disclosure of that patent was made. True, the Olsen patent was required to be and was assigned to Allen-Qualley by appellant because of appellant's inequity in purchasing it. That, however, did not add to the inviolability of the confidential communication, as between appellant and Allen-Qualley, nor did it detract from it. It merely gave to Allen-Qualley a monopoly

against all the world. As between it and appellant, the effect was the same as if a patent had issued on the Olm and Mair application, which belonged to Allen-Qualley. In that event anyone, except appellant, could have infringed it if he desired to do so and thereby hazard an action for infringement at the hands of Allen-Qualley. But not so with appellant, for the consensus of authority is that by its inequitable conduct appellant has precluded itself from enjoying the rights of the general public to the patent disclosure, and will not be permitted to place upon Allen-Qualley the burden of suing for patent infringement, when its proprietary rights in the process have already been adjudicated against appellant. A. O. Smith Corporation v. Petroleum Iron Works Company (C.C.A.) 73 F.(2d) 531; Id. (C.C.A.) 74 F.(2d) 934; Allen-Qualley Company v. Shellmar Products Company, supra; Shellmar Products Company v. Allen-Qualley Company, supra; Du Pont Powder Company v. Masland, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016.

Appellant's reliance upon the Royal, Robinson and Novick patents as grounds for review, lies in the facts that they were issued since the decree was entered, and constitute disclosures by others than Allen-Qualley with which appellant was in no way connected. Hence, it argues that as a part of the general public, it is entitled, as against Allen-Qualley, to make use of that company's secret process, and that the injunction should be dissolved. In support of that contention, it relies upon John D. Park & Sons Co. v. Hartman (C.C.A.) 153 F. 24, 12 L.R.A.(N.S.) 135, and Thum Company v. Tloczynski, 114 Mich. 149, 72 N.W. 140, 142, 38 L.R.A. 200, 68 Am.St.Rep. 469. Generally, those cases merely reiterate the well-known principle that the public is free to make use of secret processes discovered by fair and honest means, and neither presents facts analogous to those presented here. Appellant quotes from the last cited case as follows:

"It should also be observed * * * that the word 'property,' as applied to trade secrets and trade inventions, has its limitations; for it is undoubtedly true that when an article manufactured by some secret process, which is not the subject of a patent, is thrown upon the market, the whole world is at liberty to discover, if it can by any fair means, what that process is, and, when the discovery is thus made,

to employ it in the manufacture of similar articles. In such a case the manufacturer's or inventor's property in his process is gone."

Immediately following this quotation, however, the court said:

"But the authorities all hold that, while knowledge obtained in this manner is perfectly legitimate, that which is obtained by any breach of confidence cannot be sanctioned."

The facts before us show that appellant discovered nothing from the Royal, Robinson and Novick patents. The word "discover" means to get first sight or knowledge of; to get knowledge of what has existed but has not theretofore been known to the discoverer. The process disclosed by these patents had been discovered by appellant when it received the confidential communications from Allen-Qualley, and it will not be heard to say that it again discovered the process from the subsequent patents upon which it now relies. Furthermore, as a defense at the original trial, appellant relied upon the product and process subsequently patented by Royal, to show that Allen-Qualley had no secret, and it received an adverse ruling thereon. The same disclosure, so far as appellant is concerned, is not strengthened in any manner by the issuance of the patent to Royal, and lends no support for the relief now sought. The Royal patent is but a counterpart of the British Robinson patent, both being obtained by Royal, and what has been said applies to both. Neither they nor the Novick patent furnished any ground for relieving appellant from the injunction which resulted from its own misconduct. It is clear that a patent disclosure by Allen-Qualley would not entitle appellant to the relief sought, and we conceive of no reason why a stranger's disclosure would atone for the wrong. This, in effect, was decided in the original decree, and we affirm that decision. True, the Novick disclosure was not before that court, but the Olsen United States patent was considered, and Olsen was a stranger to Allen-Qualley so far as the disclosure was concerned.

Under this view of the law, we think the District Court was right in holding that the evidence relating to the disclosures of the Royal, Robinson and Novick patents, although subsequent in point of time, was merely cumulative with respect to the issue presented on the original hearing and for that reason was not sufficient to warrant a

review. Stearns-Roger Manufacturing Company v. Ruth (C.C.A.) 79 F.(2d) 425; Bradley Manufacturing Company v. Eagle Manufacturing Company (C.C.A.) 57 F. 980.

It is suggested by appellees, and we think justly so, that the instant action was prematurely brought because appellant has suffered no legitimate damage and can not suffer through a continuance of the injunction. If the injunction were dissolved, appellant would be confronted with Royal and Novick, whose validity it is in no position to question, at least in any controversy in which Allen-Qualley is involved, under A. O. Smith Corporation v. Petroleum Iron Works, supra, and it is clear that appellant's Revelation wrap would infringe each. It would also be confronted with Olsen, whose validity it has admitted by assignment, and the infringement of which was admitted by appellant in marking its Revelation wraps with the Olsen patent number and by threatening suit thereon against the identical wrap.

It is contended by appellant, however, that it can not be classed as a former owner or a voluntary assignor of the Olsen United States patent, because the original decree held that appellant was acting as a constructive trustee when it purchased it from Olsen, and at that moment Allen-Qualley became the equitable owner. Hence, it argues that appellant was never the owner and can not be prevented on account of the enforced assignment, or its use, from denying its validity or its infringement. We are not impressed with this argument. Appellant admittedly held the legal title and possession of the patent. It assumed that it owned the equitable title, and was persistent in its denial of a trust relationship, and in manufacturing its product according to the involved process under the aegis of the Olsen patent. The court enforced an assignment, which should have been a voluntary one in view of appellant's knowledge of the undisputed facts. Moreover, prior to the original decree and the assignment, the Miller Canadian patent, covering the same process, had been issued to appellant, and it had applied for the Olsen Canadian patent, which facts were not known to the court at the time of the interlocutory decree. Almost a year afterwards, the Olsen Canadian patent, the counterpart of the Olsen United States patent, was issued to appellant, which since that time has continued to operate under it.

Under those circumstances, we perceive no reason why equity should confer upon appellant a status, because of its involuntary assignment, different from that of a voluntary assignor. By the assignment, Allen-Qualley was placed in the same situation, so far as appellant is concerned, as if a patent had issued upon the Allen-Qualley application, and we think the injunction should continue, and appellant should not be permitted to burden Allen-Qualley or its assigns with the necessity of infringement proceedings. To grant appellant's petition would be in effect to grant it the privilege of becoming a defendant in an infringement suit which appellant has no right to cause to be brought, and which it could not successfully defend.

It is further contended by appellant that Allen-Qualley was deprived of its further right to hold appellant under the injunction because of Allen-Qualley's assignment of its entire right, title and interest in the invention since the decree. It is worthy of note, however, that appellant admits that that assignment did not refer to or purport to convey any secret rights. This contention is obviously based on the erroneous assumption that the original decree was bottomed on the protection of a prior invention, when in fact it was based upon the violation of a confidential relationship. That relationship remains the same, and we think it is unaffected by Allen-Qualley's assignment. The consideration for the assignment included unnamed valuable considerations moving to Allen-Qualley, the character of which this record does not disclose. The assignment was made to the Royal-Allen-Mair Company, which name indicates an alliance of interests, as Allen and Mair were employees of Allen-Qualley in whose name that company had applied for a patent on its process, product and machine. In the absence of evidence other than this assignment, the court will not presume that Allen-Qualley did not still retain a very real and valuable interest in its trade secrets, as against appellant, which could be preserved and protected only by a continuation of the injunctive decree.

If, as we think, the injunctive right under the original decree is still existent, it is immaterial in the determination of this cause whether it is owned by Allen-Qualley or the other appellees or all of them collectively, as they were all before the court. It is quite true that Allen-Qualley's trade

110

secrets have been disclosed to the world. That disclosure was the cause of the original action which resulted in the injunction. Appellant first made that disclosure in an unlawful manner, and because of that fact it can not contend that it is a member of the public to whom it made the disclosure. To hold otherwise, would be to permit appellant to profit by its own wrong. We are dealing here not with Allen-Qualley's right against the world, but with that company's right against appellant. Morison v. Moat, 9 Hare, 241, 41 Eng.Chancery, 241. We hold, therefore, that the reason for the injunction still exists and that Allen-Qualley's right thereto has not been extinguished.

With respect to the issue raised by the counterclaim, we think the District Court's order that the Canadian patent, No. 297,343, and Canadian reissue patent No. 335,489, be assigned to Allen-Qualley, should not be disturbed. The same reason exists for those assignments as existed for the assignment of the United States patent to Olsen. The application for the first one, and the original patent upon which the reissue was based, should have been voluntarily assigned at the time of the decree. Their assignments undoubtedly would have been ordered at that time had not appellant failed to inform the court of the facts.

Decree affirmed.