**STEARNS–ROGER MFG. CO. v. RUTH.**

**No. 1418.**

Circuit Court of Appeals, Tenth Circuit.

Dec. 29, 1936.

Forrest C. Northcutt, of Denver, Colo., for appellant.

Max D. Melville, of Denver, Colo., for appellee.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

Heretofore we have held the appellee's patent valid and infringed, Stearns-Roger Mfg. Co. v. Ruth, 62 F.(2d) 442, and declined to hear additional evidence tendered with a view of demonstrating the error of our way, Stearns-Roger Mfg. Co. v. Ruth (C.C.A.) 79 F.(2d) 425, and have ordered that appellee recover from appellant "the profits, gains, and advantages which defendant has received or which may have accrued to it by reason of its past infringements of said Claims 1 and 3 of plaintiff's said patent No. 1,277,750, in suit, as in the findings and conclusions herein found and determined, and/or the damages which plaintiff has suffered by reason of defendant's infringement."

The accounting was taken by Robert B. Cartwright, Esquire, as a Special Master, who has filed comprehensive findings of fact accompanied by a helpful memorandum opinion, reported in (D.C.) 13 F. Supp. 697. Exceptions were denied by the trial court. In discussing the errors specified, we refer the reader to the reported opinion of the Master for many pertinent authorities which we do not here repeat.

1. The infringing devices were equipped with a sands hole; the function of that hole was an important issue in the trial of the infringement case; much proof was heard; the trial court found that the hole was not essential to a proper functioning of the machine, and that in the use of the commercial device it was kept closed. This court affirmed. 62 F.(2d) 442, 448. Appellant thereupon made tests and procured testimony from users said to show that the finding was erroneous, and applied here to file a bill of review to bring onto the record this additional evidence. No reason appearing why this testimony was not available at the trial, nor why it was not then produced, this court denied the application. 79 F.(2d) 425. It may be added that the machines either were infringing machines or not when they were sold. We held they were. If they were designed so that they could be operated normally in an infringing way, it would seem to be immaterial that some customers did not choose at times to operate them in that manner.

Appellant then undertook to convince the Master that we were in error in affirming the trial court's finding on the first appeal, and tendered testimony to the effect that tests and experience disclosed a state of facts in conflict with our first opinion. The Master refused to hear the evidence which this court had held on the application for the bill of review should have been offered at the trial. In this he was clearly right. It is conceded that the machines found to infringe were constructed precisely as disclosed by drawing 4965 which was decreed to infringe. While this court may, on an equity appeal, enter such decree as the proof warrants, we are in no sense a trial court. The place to offer proof on issues of fact is at the trial. There would be no end to litigation if cumulative proof might be offered on appeal, or, which is even more aggravated, when an account is being taken after affirmance. The controlling authorities cited by Judge Lewis in the opinion on the bill of review, together with his analysis of the situation, makes further comment superfluous.

2. The Master computed the profits upon the entire sale price of the machine. Appellant contends the award should have been confined to the profits received because of its use of the patented partition or weir; that appellee having failed so to apportion the profits, may recover only nominal damages.

The general principles are stated in Westinghouse Co. v. Wagner Mfg. Co., 225 U.S. 604, 32 S.Ct. 691, 56 L.Ed. 1222, 41 L.R.A.(N.S.) 653; many applications may be found in the authorities collected by the Master. Those authorities disclose the difficulties attendant upon appraising the value of an invention, and the impossibility of any hard and fast formula by which exact justice can be meted out in every case. In the case at bar, we are not dealing with damages as such, nor with savings accruing to users of infringing devices. We are concerned only with profits made on sales. But even when so narrowed, perplexity persists in many cases. We do know that there is no magic in words which leads directly to a just result. Egry Register Co. v. Standard Register Co. (C.C.A.6) 23 F.(2d) 438; Alliance Securities Co. v. De Vilbliss Mfg. Co. (C.C. A.6) 76 F.(2d) 503. In the case at bar, appellant relies largely upon the fact that in the patent to Pearce and in the opinion of this court, the invention was described as an "improvement," from which it concludes that appellee must apportion the profits or fail. But there is nothing entirely new under the sun. Alexander Graham Bell described his revolutionary invention of the telephone in his basic patent as "a new and useful improvement in telegraphy." Telephone Cases, 126 U.S. 1, 8 S.Ct. 778, 31 L.Ed. 863. Nor can appellee prevail simply because his invention is a "combination," for the separable drill shoe in Dowagiac Mfg. Co. v. Minnesota Plow Company, 235 U.S. 641, 35 S.Ct. 221, 59 L.Ed. 398, was described in the patent as in combination with the rest of the drill. Dowagiac Mfg. Co. v. Smith (C.C.4) 108 F. 67. Nor is it material that the patent is for an ingenious and useful combination of old elements. Dow Chemical Co. v. Williams Bros. Well Treating Corporation (C. C.A.10) 81 F.(2d) 495, 498.

Judge Learned Hand's discussion in Cincinnati Car Co. v. New York Rapid Transit Corporation (C.C.A.2) 66 F.(2d) 592, goes far toward clearing up the problem. The conventional distinction [1] be-

---

[1] The distinction may be thus illustrated: In the Dowagiac Case the patent covered an improved spring shoe on a grain drill. The old grain drill was a functioning machine without the new device. It would have been manifestly unjust, as the

tween an article patented as an entirety, and one in which the article is a separable device to be used in connection with another machine operable without the device, suffices in most cases, but it may be pressed to the point, as Judge Hand points out, where the conscience of the Chancellor rebels.

█ A practical approach is a better solvent of the problem here than the theoretical. If the case is such that it is practicable for the patentee to apportion the profits between what is new and what is old, he should do so or fail. If it is not, then the infringer should either make the apportionment or yield up all the profits unless such a decree would be shockingly unjust, in which event the patentee should be relegated to a royalty. This, as we understand it, is the rationale of Judge Denison's opinion in Egry Register Co. v. Standard Register Co., supra.

█ So approaching the problem, we turn to the case at bar. The opinion on the first appeal, 62 F.(2d) 442, describes the patented machine and the prior art; it discloses that the essence of the invention was the arrangement of parts and the steps of a process so that a proper pulp level is automatically maintained, thus doing away with valves, etc. No structural part can be pointed to as effecting the desired result. The weir would be useless without the impeller or without two communicating compartments; each unit must be properly positioned. The conception is not of a separable device to improve the efficiency of an old machine; it is a new machine. Other flotation machines were on the market; the problem the patentee attacked was that of substituting automatic control of the pulp for the manual or hydrostatic control then in use. If this had been accomplished by a float valve which could be attached to the machines then in use, a very different case would be presented. The patentee solved the problem by a rearrangement of parts coupled with a defined process. The case is one, as we see it, where any apportionment of profits, by either party, is impossible.

█ Even where a machine is patented as an entirety, the infringer still may show, if he can, that a portion of the profits received from the sale of an entire machine was the result of some other thing used by him. Westinghouse Co. v. Wagner Mfg. Co., 225 U.S. 604, 32 S.Ct. 691, 56 L.Ed. 1222, 41 L.R.A.(N.S.) 653. Either in an effort to apportion the profits, or to carry this burden, appellant offered the testimony of two mining engineers. But the proof so adduced was simply that the witnesses, in recommending this machine to their clients, considered the air control, the hard iron liners, the sands hole, ball bearings, etc., as well as the weir; that the presence of the weir was not the dominating influence in the recommendations. This evidence is without value. The engineers recommended the entire machine, and the appellant sold an entire machine. Resort cannot be had to an analysis of the mental processes of the engineers in recommending the purchase of infringing machines in order to compute profits. If so, the profits would vary with the state of mind of different purchasers. If the accounting were for damages for lost sales or of savings to a user of an infringing device, then proof that other comparable articles were available at about the same price—the so-called "standards of comparison" rule—would be pertinent. But where the recovery is limited to net profits of sales actually made, such evidence is not pertinent. Page Mach. Co. v. Dow, Jones & Co. (D.C.N.Y.) 238 F. 369, 372; Walker on Patents (6th Ed.) § 775.

█ The Master was put to the choice, under the proof, of awarding appellee nominal damage, which would be grievously unjust and not in accord with the spirit of our mandate; relegating him to royalties, manifestly impracticable here, for there could be no fairly accurate measure of a reasonable royalty; or requiring appellant to yield up all the profits made on the sales of these machines. The latter choice was made, and we concur; if care is taken to see that appellant is allowed all its costs, so that the award is for net profits realized and no more, no injustice will be done.

---

court held, to compute profits on the whole drill because of the use of a patented shoe. On the other hand, in Elizabeth v. Pavement Co., 97 U.S. 126, 127, 141, 24 L.Ed. 1000, the patent covered a "new and improved wooden pavement"; in the combination were old elements. The court held that no apportionment of profits was necessary, that "The Nicholson pavement was a complete thing, consisting of a certain combination of elements. The defendants used it as such,—the whole of it." See, also, Warren v. Keep, 155 U.S. 265, 15 S.Ct. 83, 39 L.Ed. 144.

3. A part of the profits awarded arose from the sale of parts which appellee alleged were used on infringing machines. The Master held that profits should be computed only on parts which appellant sold with the intent that they should be used on infringing machines, and which were also in fact so used.

Appellant having sold the infringing machines, and later selling to its customers parts designed for such machines, the inference is legitimate that it intended the parts to be used on the machines sold by it. But is there proof that the parts were in fact so used? Upon this, the Master said that such use will be presumed in the absence of proof to the contrary. Appellee, but not the Master, contends that the first decree is conclusive upon the point that the parts were in fact so used.

The decree of infringement was entered July 2, 1931. A part of the profits awarded here was for sales of parts after that date. That decree could not have adjudged that parts sold after that date were used on machines that infringed. That decree determined for all time that appellant invaded appellee's right when it sold these machines—the issue then before the court. It settled for all time any fact there litigated, as for example, that a specific machine had been theretofore used in an infringing way. Divide Creek Irr. Dist. v. Hollingsworth (C.C.A.10) 72 F.(2d) 859, 96 A.L.R. 937. But that decree did not, as the Master recognized, determine what the parts sold were actually used for. On the first appeal, this court held that the sands hole would "avoid infringement if it were essential to the operation of the device and if it were employed in the commercial use of the device." It was further held that the proof on that trial showed that the sands hole was neither essential nor used in the commercial device. As to the machines before the trial court on the first trial, and for the period of use covered by that testimony, the issue cannot be reopened. But on the distinct issue of the actual use to which parts were put on other machines or at other times, the question is still open.

The Master presumed the fact of use from the purpose of use, which was presumed. We pass by the mooted question as to whether, in absence of any proof, the fact of use can be presumed solely from a presumed purpose; doubtless there are parts suitable for use only on a certain machine, in which case the fact of use may be presumed from the purchase. Here appellant offered proof in support of the claim that certain of these machines, as actually used, did not infringe. True, it was offered in support of an untenable theory, to wit, that appellant did not infringe when it sold the machines, which was in derogation of a final decree. Technically no proof was offered on the precise point that the parts were not used on infringing machines; but if the proof disclosed that parts were not used in infringement, it would appear to be more just to eliminate the profits on such parts, even if the proof were formally offered on another theory.

The record is unsatisfactory in this respect; we think it fairer to all concerned if the Master reopen the account for the purpose of permitting appellant to show if it can that parts, the profits on which are included in the award, were not in fact used in an infringing manner.

4. Of the total purchase price received by appellant, it paid 10 per cent. or $7,344.30 to Minerals Separation Company, which owned other patents. That company was advised in December, 1928, that the machines in question infringed. That company furnished the blue prints from which appellant manufactured the infringing machines; appellant sold only to licensees of Minerals Separation; the 10 per cent. payment was made only after a machine was paid for; the payment was called an engineering fee.

Whether this payment was a division of spoils between those engaged in a joint adventure of infringement, or whether it was a legitimate expense of manufacture, is a pure question of fact. We are satisfied with the Master's finding of fact and his statement of the law applicable thereto. Appellant contends that the courts are powerless to determine this fact because the Minerals Separation Company is not a party. Our decision cannot bind the Minerals Separation Company in its absence; but it is a non sequitur to argue that we cannot determine a material fact between the parties in court because that fact concerns a transaction with one not in court. Courts would indeed be helpless if they could not ascertain, in a suit between A and B, whether B and C were in fact partners.

5. The Master declined to credit appellant with interest on invested capital. The proof disclosed that machines were not

kept in stock, but were manufactured on order. Nor did appellant manufacture them, but let out the work to the General Iron Works and received credit for such manufacturing cost. Appellant did furnish the drawings and at times items which the General Iron Works did not keep in stock, and paid the freight where the contract of purchase so required. But no effort was made to show the amounts invested in these items, nor the length of time of the investment; obviously the amounts were small and the time short, for appellant would recover advances when the machines were paid for. Appellant made no effort to prove its investment so employed, but contented itself with showing its capital and surplus and the proportion the infringing sales bore to gross sales. The Master was clearly right in refusing to credit appellant with interest on invested capital on this proof, since it affirmatively appeared that appellant neither used its plant to manufacture the machines, nor kept them in stock.

6. Credit was given appellant for its actual expenditures in connection with the manufacture of the infringing machines. Appellant discounted its bills, and the cash outlay was less than if it had not. Appellant claims credit for the amount it would have paid if it had not taken the discount. We agree with the Master that profits are more accurately measured by giving credit for what was paid out than by what might have been expended under other circumstances. Similarly, if purchasers of the machine had taken a cash discount, appellant would be charged only with the cash received.

7. The infringing machines were sold by salesmen employed on a salary plus a commission. The Master allowed the commissions and allocated the salaries on a ratio of infringing sales to gross sales. As with every other established business, there was an overhead expense which could not be specifically traced to any part of the business; salaries of stenographers, bookkeepers, presidents; telephone bills, supplies, insurance of many sorts, advertising —all must be paid and borne by the business.

The Master recognized the right of appellant to deduct its expenses from its gross sales; in addition to the authorities cited by the Master, reference may be had to Duplate Corporation v. Triplex Co., 298 U.S. 448, 452, 458, 56 S.Ct. 792, 794, 80 L. Ed. 1274, a patent accounting case, in which Mr. Justice Cardozo, speaking for the court, said:

"On the other hand, the extent of the gain resulting from a sale is not susceptible of ascertainment without the deduction and allowance of the incidental costs. * * * But the master has found, and the parties are agreed, that in a business of this order there is no method of accounting, not impracticably burdensome, whereby the costs of operation can be apportioned and distributed· except upon an average basis. At all events, if such a method was available, the defendants did not use it. They kept their books upon the basis of the method they decry, and measured loss or gain accordingly. Average cost, even if not identical with actual cost, is the best approximation known to accountants."

The Master, although recognizing the right, made no allowance for any part of this overhead expense because, as we understand it, no witness specifically testified that the overhead was utilized in making infringing sales. The record does disclose that the overhead expense was incurred and paid, and that it could not be specifically apportioned to particular sales; the testimony of the general manager and the secretary disclosed that they were in touch with the infringing business, from which it is a fair inference that they expended part of their time on it.

In this, we think there was error. Advertising, supervision and direction by executive officers, bookkeepers to keep accounts, stenographers to write contracts, confirmations, and letters dealing with the transactions, undoubtedly were all used in bringing to appellant more than $70,000. gross proceeds with which it stands charged. There is nothing in this record to indicate that these sales did not involve overhead expense as did the non-infringing sales of appellant, nor, for that matter, the overhead expense incurred by any established concern in selling its product. If these sales do differ from other sales of appellant, or from ordinary sales by established concerns, the record does not disclose it.

Appellee contends that all overhead should be disallowed because appellant did not prove that stenographers, telephones, etc., were used in connection with these sales. The law requires no such minutiæ, for it would make trials interminable.

When appellant proved the actual expenditures for ordinary overhead, and a fair method of allocation, it carried its burden in the first instance. If, on cross-examination or otherwise, it appears that ordinary overhead is not chargeable, in whole or in part, to the infringing business, then a proper charge only should be made. But all allowance should not be denied because stenographers, bookkeepers, janitors, and presidents were not called to testify that they did perform specific tasks on this specific business. Courts and accountants resort to allocation to obviate this particular difficulty.

There must have been some overhead expense connected with these sales, and we think some allowance should be made therefor in arriving at net profit. The record discloses the expenditures for these items for the years in controversy, but it is not as clear as it might be as to the items. Appellee challenges them in argument here; it would have been better to have explored them on cross-examination. While appellant made a prima facie case on this item of overhead, we do not have the benefit of the Master's informed judgment as to the items or a proper allocation, for he rejected the entire item; we are reluctant to allow the credit without that benefit. We think the accounting should be reopened for the purpose of ascertaining what overhead expenses should be credited against the proceeds of these sales.

■ 8. The decree treats two unpaid accounts as cash, and charges them to appellant as part of its profits with the provision that appellant may have credit on the judgment for the amount of the accounts by delivering assignments to the clerk for the use of appellee, bearing consent of the debtors and their acknowledgment of the indebtedness, and a showing that the claims are not barred by the statute of limitations. Appellant offers to assign the accounts to appellee.

The accounting is for profits received. Appellant has received two accounts, be they good or bad, and not cash. If those accounts are assigned to appellee, it has accounted for the profit it received. Oil Well Improvements Co. v. Acme Foundry & Machine Co. (C.C.A.8) 31 F.(2d) 898. The decree should be reduced by the amount of the accounts when appellant executes an assignment of the accounts without conditions. Appellee suggests that appellant may have wilfully let the statute of limitations run on the accounts upon the assumption that appellant would lose its case before the Master and in this court. Nothing in the record suggests such unbusinesslike conduct. If, on the reopening of the account, it appears that these accounts have become uncollectible through fault of appellant, then appellant should be charged with them. Otherwise, not.

The decree is reversed; the accounting should be reopened on the items indicated herein and no other.

Reversed.