## ALFRED BELL & CO., LIMITED, v. CATALDA FINE ARTS, Inc. et al.

United States District Court
S. D. New York.

July 18, 1949.

Eugene Untermyer (of Guggenheimer & Untermyer), New York City, for plaintiff.

Edmund F. Lamb (of Purdy & Lamb), New York City, for Catalda.

James G. Holland (of Ehrich, Royall, Wheeler & Holland), New York City, for U. S. Printing etc.

SMITH, District Judge.

This is an action by a British corporation for infringement, of eight separate copyrights, of plaintiff's mezzotint engravings in color, by the defendants, alleged to have wrongfully reproduced photolithographs thereof. The Court, in an Interlocutory Judgment and Order of Reference dated December 5, 1947, 74 F.Supp. 973, found infringement; enjoined the defendants

from further infringement and from further sale or disposal of any or all of the infringing photolithographs in their possession or under their control; and decreed that the plaintiff recover from the defendants jointly as joint tort-feasors, damages, profits, and attorneys' fees to the plaintiff for the services of their attorneys except so much of said services as were rendered upon certain discovery proceedings.

The Interlocutory judgment further ordered that the defendants be taxed with the allowance of the Special Master, the cost of the reference, and costs and disbursements of the suit, but decreed that defendant United States Printing & Lithograph Company should recover on its cross-claim against defendant Catalda Fine Arts, Inc., any portion of the plaintiff's recovery paid by it.

The Order of Reference charged the Special Master to "take evidence and compute and pass upon an accounting of defendants' profits and plaintiff's damages, and the plaintiff's attorneys' fees to the extent heretofore directed * * *", reporting separately also the reasonable value of the services of plaintiff's counsel in certain discovery proceedings abroad.

Thereafter hearings were held before the Special Master from April 7, 1948 through May 4, 1948. The report of the Special Master, filed October 20, 1948, awarded $2,199.77 profits against United States Printing & Lithograph Company (hereinafter called Lithograph); $8,955.53 profits against Catalda Fine Arts, Inc. (hereinafter called Catalda Company); and $1,268.20 profits against defendant Michael F. Catalda, individually. The Special Master determined that plaintiff was entitled to an award for its counsel fees of $7,500.00, and found in addition, in accord with the Court's decree, that the reasonable value of plaintiff's counsel fees for the services in connection with depositions abroad should be set at $1,500.00.

The action is presently before the Court on cross-motions for review of the Special Master's report and the objections thereto.

Defendant Lithograph has filed seventeen objections, and defendants Catalda Company and Catalda individually have filed forty-nine objections to the report. The plaintiff has moved for confirmation of the report, subject to two objections, and for final judgment.

■ The Court, by its Interlocutory Judgment, ordered the Special Master to determine both damages and profits. The plaintiff by its counsel abandoned any claim to damages, but seeks profits as defined and regulated by the copyright statute. Absent any claim for, or proof of, damages, and in view of plaintiff's affirmative disclaimer, the Interlocutory Judgment may be amended and the Court finds the plaintiff entitled only to profits, injunctive relief, costs and attorneys' fees as defined in the Interlocutory Judgment.

■ Had the plaintiff attempted to prove damages, it is clear that the defendants, as indicated in the earlier ruling, would be jointly and severally liable for the damages resulting therefrom. Gross et al. v. Van Dyke Gravure Co., 2 Cir., 1916, 230 F. 412. But the plaintiff here has proved only profits. Originating in equity, accountability for profits is peculiarly personal, the presupposition being that the infringer has gotten something which it is unreasonable for him to keep. The defendants here are not jointly accountable but individually accountable for the profits which each received, not being held for the profits which may have been received by a co-infringer. Sammons et al. v. Colonial Press, Inc., et al., 1 Cir., 1942, 126 F. 2d 341. The responsibility for costs and attorneys' fees under the statute is, however, joint as well as several.

Defendants' objections were for the most part repetitious and cumulative in effect. Some are of general nature, some relate only to single items. Two of the more general matters in dispute which may be said to depend on the degree of fault of the infringers are (1) whether the defendants should be required to pay plaintiff's attorneys' fees in the amount found to be reasonable by the Master and (2) whether in the computation of profits, the income taxes paid upon the profits for the

years in which they were earned should be allowed the defendants as deductions from their gross profits in determining the amount of profits payable by the defendants to the plaintiff. There are some cases in which an innocent infringer has been excused from the payment of any substantial attorneys' fees and, on the other hand, there are cases in which deliberate or willful infringers have been held not entitled to deduct income tax payments from the gross profits in arriving at the recovery of profits by the victim of the infringement.

The infringers in this case were not innocent of knowledge of the claimed copyright by the plaintiff of the subjects in suit. On the other hand, their villainy is not of the deepest dye in that the copying was open, with no attempt at concealment, under a good-faith claim of a right to copy because of the claimed invalidity of the plaintiff's copyright.

All the defendants appear readily to have disclosed, for the determination of the issues raised in this action, all the facts with regard to the copying of the subjects in suit and to the nature of the process used in so doing. This was in marked contrast to the difficulties encountered by the defendants in their efforts to develop the facts as to the nature of the mezzotint engraving process used by the plaintiff's artists, for its bearing on the issue of copyrightability, and on the nature of the makeup and contracts of the Fine Arts Trade Guild for their bearing on the issue of violation of the anti-trust laws by the plaintiff.

The nature of defendants' acts is, of course, darkened somewhat by the use of a false copyright label, by sales after notice, and by the defendant Lithograph's apparent unconcern over the validity of the plaintiff's copyright so long as defendants Catalda Company and Catalda individually were willing to indemnify Lithograph.

■ Under these circumstances there would appear to be no question but that, in all fairness, the defendants should be required to pay the plaintiff a substantial allowance for attorneys' fees since the defendants deliberately brought about this court test of the validity of the plaintiff's

copyrights, knowing that, by so doing, they would, if unsuccessful, incur liability for plaintiff's attorneys' fees as well as an accountability for any profits realized by them in the process.

■ The matter of disallowance of income tax deduction stands upon a slightly different footing. It appears to be a severe additional penalty imposed because of the gravity of the offense of pirating in any case. Since the Court has found that the copying here, although done with knowledge of the existence of the plaintiff's copyrights, was done under a good-faith claim of a defense of invalidity of the copyrights, it would not appear that the offense is of sufficient gravity to assess the additional penalty of disallowance of the income tax deduction here. Compare Stromberg Motor Devices Co. v. Zenith-Detroit Corporation, 2 Cir., 1934, 73 F.2d 62–65.

However, defendants' present claim of deduction for income tax is excessive in amount. Defendants' claim that income tax should be credited at the highest rate paid, while it has some plausibility, runs counter to the general scheme of accounting adopted as the measure of profits whose retention by the infringer would be unfair.

Often the infringer, if the infringement be considered the last business of the accounting period, might be considered already to have earned and written off his general overhead on his non-infringing business, so that the rate of profit on the infringement would greatly exceed the average rate for the accounting period. But as we shall see, the courts have considered it only fair to charge against the infringement as well as the non-infringing business the overhead expenses of a general nature incurred for the benefit of the business as a whole, including both types.

■ So also it would appear consistent and equitable to consider the infringements a part of the mass of business which produced the profits taxed from the bottom to the top of the scale of taxation, and credit that part with its proportion of the tax paid at each of the rates that go to make up the entire tax.

As to the amounts of the two items, the $7,500.00 assessed as reasonable attorneys' fees for the work of the plaintiff's attorneys, aside from that work involved in the discovery proceedings which was excluded by the Court from the consideration of the Master, appears to be within reasonable limits and not clearly erroneous. Some addition should be made for counsel's services on these objections. The amount of the income tax allowance also appears to be computed by the Master upon the proper formula.

So far as the profits of the individual Catalda are concerned, the Master has included both salary and commissions. The proportion of the commissions· applicable to the scale of the infringing lithographs may well be considered a profit within the meaning of the statute. With regard to his salary, part of the company's earnings from which the salary was paid was derived from the traffic in the infringing lithographs.

While the corporation was not found to be a sham or cloak to the individual defendant Catalda in business, he was the sole stockholder and the active managing head of the business, and the Master has found that no dividends were ever paid but all distribution of earnings was by adjustment of his salary and commissions. He received and retains thereby a portion of the proceeds of the infringements.

The judgment against him should, therefore, be, as found by the Master, for such profits as he received by way of commission upon the proportion of the Company's business represented by the infringements, and a similar proportion of his salary.

Income tax payments should be allowed as a credit on the same basis as in the case of the other defendants.

### Objections of Defendant Lithograph Co.

The defendant Lithograph's first objection is to the Master's finding, either expressly or by implication, that the Company admitted or conceded the sale prices of the infringing prints to be seventy-three cents ($0.73), and thirty-nine and one-half ($0.395) cents each.

The prices found to which this objection is directed appeared on the original order-contracts from Catalda to the defendant Lithograph, calling for the production of 2,500 of each of ten prints, of which eight are involved here.

The Court is unable to find an express admission by the defendant Lithograph that the prints were sold at the prices which the Master stated to be so conceded. However, these unit prices appear without contradiction on exhibits introduced by said defendant, and the record clearly indicates that the order-contracts initiating the production of these infringing prints specified sales at the unit prices determined by the Master. There is no oral evidence that any other price was contemplated at the time the parties completed their negotiations for the production of the prints, later found to be infringing.

Neither the Master nor the Court may speculate as to what might have been the unit sales price intended by the parties had they known that the quantity produced and delivered would be a smaller quantity, —such diminution resulting not from a change in the intent of the parties as reflected by the original bargain but rather as a consequence of the interference of this action for infringement.

In an accounting for profits, the Court is not interested in what the parties would have priced the infringing prints at had they been able to forsee such an intervening factor. The defendant here is limited to the actual sales price as of the time of the contracting just as the plaintiff is restricted in recovery to actual profits. Cf. Callaghan v. Myers, 1888, 128 U.S. 617, 9 S.Ct. 177, 32 L.Ed. 547.

Under these circumstances the Master had no alternative but to rely upon those prices found in the order-contracts and exhibits pertaining thereto. There is no requirement that the Master or the Court, at this late date, attempt to reform or reconstruct the basis of the original negotiations which nourished the invasion of the plain-

tiff's copyright. The Master's finding is not clearly erroneous and the objection is overruled.

Defendant Lithograph's second objection is to the Master's finding that the Company admitted or conceded a net profit of $1,066.77. The amount which said defendant claims not to have admitted is found plainly stated on defendant's own Exhibit A, prepared by said defendant, and admitted into evidence before the Master. Absent any contradiction or subsequent modification thereof, the Master did not err in finding the amount to have been admitted, and this objection is overruled.

Next, defendant Lithograph has objected to the Master's disallowance of its selling and administrative expenses in the amount of $1,133.00 (Objections 3, 4). The Master found that Catalda Company was an old customer, that the sale of the infringing prints to the old customer did not involve any substantial sales effort, and that the expenses claimed included the general business of promoting other sales unrelated to the Catalda Company transaction involving the invading prints. On the basis of these findings, he disallowed the claimed selling and administrative expenses. This was clearly erroneous and the objections are sustained.

There is sufficient evidence in the record to establish that said defendant incurred certain selling and administrative expenses in the Catalda Company transaction for the infringing prints. Though the Master found, and correctly so, that there was no substantial sales effort by salesmen on a commission basis, nevertheless there were certain sales efforts expended by defendant Lithograph's vice president who was in communication with Catalda Company and serviced the account.

Defendant Lithograph certainly is entitled to some expense for selling and commercial overhead, including facilities, personnel engaged in selling and serving customers, and bookkeeping costs. Stearns-Roger Mfg. Co. v. Ruth, 10 Cir., 1936, 87 F.2d 35; Gordon et al. v. Turco-Halvah Co., Inc. et al., 2 Cir., 1917, 247 F. 487; Oehring et al. v. Fox Typewriter Co.,

2 Cir., 1918, 251 F. 584, 588; Computing Scale Co. v. Toledo Computing Scale Co., 7 Cir., 1921, 279 F. 648, 659.

There need be no showing, such as the Master has suggested, that there was a substantial sales effort involving solicitation of the business in the first instance. The expenses claimed here by defendant Lithograph assisted in the production of the infringing profits and were a legitimate part of the general overhead of its business. Sammons et al. v. Colonial Press, Inc., et al., supra; Levin Bros. v. Davis Mfg. Co. et al., 8 Cir., 1934, 72 F.2d 163.

The plaintiff, however, contends that, on cross-examination, it successfully established the inapplicability of the deductions claimed for selling and administrative expense, and that, therefore, such items should not be allowed. Cf. Stearns-Roger Mfg. Co. v. Ruth, supra. In the Stearns case, relied upon by the plaintiff, the Court stated: "When appellant proved the actual expenditures for ordinary overhead, and a fair method of allocation, it carried its burden in the first instance. If, on cross-examination or otherwise, it appears that ordinary overhead is not chargeable, in whole or in part, to the infringing business, then a proper charge only should be made." Stearns-Roger Mfg. Co. v. Ruth, supra, 87 F.2d at page 42.

The plaintiff, by its cross-examination, did not discredit defendant Lithograph's claim for selling and administrative expenses. There was no showing by plaintiff through cross-examination that the sales efforts expended by defendant Lithograph's vice president, as well as the bookkeeping expenses, were not a part of general selling overhead. The plaintiff did not disprove these expenses and mere evidence that Catalda Company initiated the transaction is not a sufficient basis for the denial of the claimed deductions. Even if the plaintiff had disclosed by cross-examination that ordinary overhead was not chargeable, in whole or in part, to the infringing part, defendant Lithograph should be allowed to deduct a "proper charge." Stearns-Roger Mfg. Co. v. Ruth, 87 F.2d at page 42.

The defendant Lithograph is entitled to the selling and administrative expenses claimed here and these objections are sustained.

The Master's allowance of $1,027.32 as a deduction for income tax for the year 1943 and his finding that the plaintiff is entitled to make application at the foot of the decree to be entered here for any amount of income taxes refunded, are also objected to by the defendant Lithograph. (Objections 5, 6, 7).

In objecting to the amount of $1,027.32 actually allowed as an income tax deduction, said defendant relies on a theory, unsupported by citation to authority, that the deduction for income taxes should be credited at the highest rate paid. The Master in his memorandum noted Lithograph's claim for a computation based on charging income from the infringing prints to the top brackets of its income tax return, but declined to do so on the theory that the amount allowed was exactly what was originally sought by this defendant and represented an allocation on its income tax actually paid. The Master based his allowance on the income tax paid.

Defendant Lithograph now seeks to avoid the deduction which it originally sought and which was approved by the Master as an item representing an allocation made on its income tax as actually paid. The basis of its objection to the amount of the allowance is that the Master failed to consider the infringing profits as extra profits and for income tax purposes profit chargeable at the highest brackets. Apparently defendant Lithograph contends that if it had not received the infringing profit its tax would have been reduced at the top brackets.

This contention that income tax on the infringing profits should be credited at the highest rate runs counter to the general scheme of an accounting for profits. Overhead assisting the infringement has been charged against the infringing as well as the non-infringing business. Profits from the infringing prints, as well as profits from defendant Lithograph's other business produced the profits which were subject in the year 1943 to taxation from the lowest bracket to the top scale of taxation. It would seem, therefore, that any profits from the infringements as part of the total business which produced the profits for that year, taxed from bottom to the highest tax brackets, should be credited with its proportion of the tax actually paid, not at the top, but at each of the rates that go to make up the entire tax.

■ The Master's allowance of the tax deduction, insofar as it represents an allocation made on its income tax as actually paid, was not error. A portion of the income tax which the defendant has paid, computed in the ratio of infringing profits to the gross profits of the business, may properly be deducted from the infringing profits,—Macbeth-Evans Glass Co. v. L. E. Smith Glass Co., 3 Cir., 1927, 23 F.2d 459, and as to the method employed by the Master, defendant Lithograph's objection is overruled.

There is, however, some question as to the amount actually allowed by the Master. It would appear that the basis of the determined allowance is to be found in the last column of figures on Exhibit A, where the figure $1,172.32 is shown as the income tax charge applicable to the infringing prints. Inasmuch as the Master stated that he was allowing the deduction claimed by the defendant, and because it further appears that the Master relied, for this purpose, on the computations found in the last column of Exhibit A, it would seem that the figure $1,072.32, which in another part of his memorandum also reads as $1,072.32, should have been $1,172.32. Defendant Lithograph's objection is sustained and the Court rules that defendant Lithograph is entitled to a deduction for income taxes in the amount of $1,172.32.

■ The objection by defendant Lithograph to the Master's finding respecting any future tax refunds to said defendant is overruled. Should the Lithograph Company make application for recomputation and reduction of its income tax liability as a result of this decision, the plaintiff would be entitled to receive its proper proportion of any income tax refund ob-

tained, computed on the same basis as was employed to determine the tax. Macbeth-Evans Glass Co. v. L. E. Smith Glass Co., supra. In so ruling we do not consider the question raised by this defendant as to whether or not any claim for refund is barred. All we do decide is that, should an application be made, and a refund forthcoming, plaintiff is entitled to a share thereof, computed as suggested herein.

Defendant Lithograph has entered numerous objections to the Master's allowance to the plaintiff of $7,500.00 for overall attorneys' fees in this litigation, and to his finding that $1,500.00 is a reasonable fee for services rendered by plaintiff's attorneys in the discovery proceedings. (Objections 8, 9, 10, 11, 12, 13, 14.) These objections are overruled.

The substance of the objections to the Master's allowance for the over-all services of plaintiff's attorneys is that the $7,500.00 is excessive, improperly charged against said defendant, out of proportion to the amount of profits chargeable to this defendant, and constitutes a penalty. Objecting to the $1,500.00 value placed upon plaintiff's attorneys' services on the discovery proceedings, said defendant contends that the Master erred in failing to deduct the $1,500.00 from the amount reported as chargeable to the defendants under the Interlocutory Judgment and further erred in his ruling that the services rendered by plaintiff's attorneys on the discovery proceedings represent only a fifth or sixth part of the total services rendered by plaintiff's attorneys, whereas this defendant claims that the Master should have found such to constitute 35% of the total value of the services rendered by said attorneys.

The defendant Lithograph cites Sammons et al. v. Colonial Press, Inc. et al., supra, 126 F.2d at page 350, as authority for the proposition that no allowance for plaintiff's attorneys' fees should have been granted against said defendant. The Sammons case, however, is distinguishable from the defendant Lithograph's situation, for in that action the Court, finding that the publisher alone knew that the material turned over to the printer had been extracted from the plaintiff's copyrighted work, disallowed any assessment of attorneys' fees against the printer because he had proceeded to print the infringing works in good faith and without any notice or knowledge of the plaintiff's copyright.

Such is not the case here. Plaintiff's copyright notices were plainly exposed to Lithograph at the time its co-infringer Catalda provided the mezzotints for reproduction. Defendant Lithograph co-operated with its co-infringers in causing this court test of the validity of the plaintiff's copyright. Even though, as this Court has found, the test was brought under a good-faith claim of a defense of invalidity of the copyrights, nevertheless the defendant pursued this course with knowledge that its failure would result in liability for plaintiff's attorneys' fees as well as an accountability for any profits realized from the infringement.

The acts of defendant Lithograph are sufficient to sustain the Master's assessment of attorneys' fees against it as well as its co-infringers.

The assessment of $7,500.00 as reasonable attorneys' fees for the work of the plaintiff's attorneys, aside from the work involved in the discovery proceedings, excluded from the consideration of the Master, and aside from the work of plaintiff's attorneys on these objections, was reasonable and not clearly erroneous. The Master's assessment, however, should be modified to provide a reasonable fee for plaintiff's attorneys' services on these objections, which amount we determine to be $250.00, and plaintiff is entitled, therefore, to a total of $7,750.00 for all its attorneys' services to date, excluding the efforts of its counsel on discovery proceedings.

Nor have we, in sustaining and revising the Master's allowance upward, overlooked defendant Lithograph's alternate contention, that even if the Court found a distinction between this case and the Sammons situation, it would still be necessary to reduce the allowance against the defendant to an amount less than the recovery against the defendant. The Master allowed the plaintiff to recover profits as against defendant Lithograph in the amount of $2,--

199.77, and this defendant claims that to allow $7,500.00, plus a possible additional fee for the discovery proceedings against it, runs counter to the great weight of decision in this area holding that an allowance is generally, and in the absence of special circumstances, limited to an amount less than the plaintiff's recovery.

Perhaps defendant Lithograph's contention would be persuasive were this a case in which it had been possible to conclude that attorneys' fees should be assessed individually instead of jointly and severally. The Court, in the exercise of its discretion, determined by its Interlocutory Judgment that the facts in this case warranted the assessment of attorneys' fees against the several infringers jointly and severally. In so deciding, it was not influenced by the amount of the profits each individually gained from the infringement, but rather the part each played in causing this legal test of the validity of the plaintiff's copyright. Defendant Lithograph, as a co-infringer and a joint tort-feasor, must bear its share of the attorneys' cost without regard for its perhaps somewhat smaller profit. At best, however, the objection is academic for Lithograph is saved harmless by the provisions of the Interlocutory Judgment which provides that it may recover on its cross-claim against the defendant Catalda Company for any portion of the plaintiff's recovery paid by it.

Defendant Lithograph's objections to the Master's findings as to the reasonable value of the services of plaintiff's attorneys in the discovery proceedings are at present moot questions. Nevertheless, the Court has considered the amount found by the Master and does not find it clearly erroneous. Accordingly, those objections to the amount of the value found to be reasonable and the percentage relationship of the services on discovery to the total value of the services rendered by plaintiff's attorneys are overruled. (Objections 10, 12, 13.)

The objection raised by the defendant Lithograph to the Master's failure to subtract the $1,500.00, found to be a reasonable compensation for the services rendered by plaintiff's attorneys in discovery, from the $7,500.00 is clearly without substance. The Interlocutory Judgment excluded the allowance of any such fees to plaintiff's attorneys and the Master, in merely reporting what he thought to be a reasonable value of the services, was acting under specific instructions from the Court. It is plain that he did not consider the services on the discovery proceedings in arriving at the $7,500.00 figure. To deduct the $1,500.00, as this objection suggests, clearly would have been error. The objection is overruled.

The defendant Lithograph also objects to the failure of the Master to find that the plaintiff actually suffered no damage from the infringement. (Objection 15.) This Court, by its Interlocutory Judgment and Order of Reference, so ordered the Master but the plaintiff by its counsel abandoned any claim to damages, and sought only profits. As a consequence of the plaintiff's affirmative disclaimer, the Interlocutory Judgment was ordered amended earlier in this opinion, providing only for profits, injunctive relief, and costs and attorneys' fees. Such a finding would be superfluous and the objection is overruled.

By its remaining objections, defendant Lithograph urges that the Master erred in failing to apply the doctrine of apportionment of profits as set forth in Sheldon et al. v. Metro-Goldwyn Pictures Corp. et al., 1940, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825; Id., 2 Cir., 1939, 106 F.2d 45. Defendant Lithograph cites as error the Master's failure to find, first, that the infringed matter did not contribute solely and exclusively to the production of the profits derived by the defendants, jointly and severally (Objection 16), and second, his apparent lack of a conclusion that the defendants Lithograph and Catalda Company should be held to account for no more than 20% of the net profits derived by them from the sale of the infringing prints. (Objection 17.)

Clearly the evidence before this Court and the Master would not justify a finding that the infringed matter did not contribute solely and exclusively to the production of the profits derived from sales of the infringing prints by the defendants.

Defendant Lithograph points to the testimony of a representative of one of the largest publishers of reproductions in this country as authority for its contention here. This art publisher testified that: the subject matter of the print is the largest factor in the saleability of the reproduction, constituting more than half, and the remainder is attributable to the reputation of the house, popularity of salesmen, quality of the printing and the paper and price; and that the fact that the lithographic reproductions were mezzotints in itself added nothing to saleability.

Other than this opinion, the testimony by one art publisher, there is no evidence whatsoever indicating that any portion of the profits derived from the infringing prints was attributable to the "expert or creative operations" or contributions supplied by the defendant infringers. Under these circumstances, the Master did not err and Lithograph's objection to his failure to find that the infringed matter did not contribute solely and exclusively to the production of the profits derived by the defendants jointly and severally is overruled.

Manifestly, then, defendant Lithograph's final objection must also be overruled. Certainly equity is concerned with making a fair apportionment in order that neither party will have what justly belongs to another.

The principle of apportioning profits has been used in patent law to prevent the doing of a manifest injustice, namely, to award all the profits from the sale of a machine to the owner of a patent that was infringed by only a part of the machine. Cf. Dowagiac Manufacturing Company v. Minnesota Moline Plow Company, 1915, 235 U.S. 641, 646, 35 S.Ct. 221, 59 L.Ed. 398; Westinghouse Electric and Manufacturing Company v. Wagner Electric and Manufacturing Company, 1912, 225 U.S. 604, 615, 32 S.Ct. 691, 56 L.Ed. 1222, 41 L.R.A.,N.S., 653.

The result to be accomplished is a rational separation of the net profits so that neither party may have what rightfully belongs to the other. And the doctrine now has been extended to accounting for profits in a copyright case. Sheldon et al. v. Metro-Goldwyn Pictures Corp. et al., supra.

But the Supreme Court in the Sheldon case did not rule that the doctrine of apportionment was available in each and every copyright accounting for profits. Rather, the doctrine was invoked in that case because there had been a clear showing that the profits made by the infringers there were only in part attributable to the use of the copyright material, and because the evidence further tended to show that much of the profits was due to the actors, scenery, skill in production, expense, etc., supplied and paid for by the infringers.

There has been no such showing here. The Master and the Court have made allowances in its favor on various items of overhead, and defendant Lithograph has been credited with the deductions to which it is justly entitled. There was no justifiable basis for the Master to apply either the doctrine or the percentage employed in the Sheldon case, nor is there any "grotesque injustice" resulting from the failure of the Master to apportion the profits. The objection is overruled.

Objections of Defendants
Catalda Company and Catalda Individually

These defendants' first objection is to the Master's disallowance of the selling and administrative expenses in the amount of $1,133.00 claimed by the defendant Lithograph as a deduction from the gross profits derived by it from the manufacture and sale of the infringing prints. This objection is sustained for the reasons set forth fully supra in our rulings on defendant Lithograph's objections.

Next the defendants Catalda Company and Catalda individually have objected to the method employed by the Master in determining his allowance to the defendant Lithograph of a deduction for income taxes (Objection 2). This objection is overruled for the reasons already set forth in our discussion of the objections raised by the defendant Lithograph.

These defendants also object to the Master's allowance of $1,072.32 to Litho-

graph as a deduction for income taxes. This objection is sustained in accord with what we have said in connection with said Lithograph's objections, and the amount to be allowed to Lithograph as a deduction for income taxes is fixed at $1,172.32.

Objection 4 is covered by what we have said in ruling on the objections filed by defendant Lithograph to the Master's allowance and finding as to income tax deductions. The objection is overruled in conformity therewith.

Next the defendants Catalda Company and Catalda individually have objected to the Master's finding, either expressly or by implication, that said defendants failed to admit the number of infringed prints sold and the total sales price of $17,716.00 derived from the sale of said prints (Objection 5). The Master found, and correctly so, that said defendants had not admitted in their answer to plaintiff's "demand to admit the truth of facts" that, as requested by Item #3 in said demand, the total sales price of said infringing prints was $17,-716.68. Defendants' answer is certainly equivocal and not a clear admission. The Master further found, however, that said defendant, nevertheless, had conceded on trial that the total sales figures derived from the infringing prints was $17,716.68. In the light of the equivocal answers to the demand, and in view of the Master's alternate finding, irrespective of the admission, this objection appears to be without foundation and is overruled.

The next three objections (Objections 6, 7, 8) relate to the method used by the Master in determining the amount allowed to Catalda Company as a deduction for the cost of the 9,930 infringing prints. The Master employed the per-unit price per print which appeared on all the exhibits introduced as the price quoted by Lithograph for Catalda Company for each print. Multiplying the number of infringing prints sold by these prices per unit, the Master concluded that the sum actually paid by Catalda Company to Lithograph for the 9,930 infringing prints sold amounted to $4,205.62. The defendants by these objections claim that the Master erred in finding

that the defendants conceded the amount of $4,205.62 to be what it had paid for the infringing prints actually sold; that he further erred in determining that the admissions relative thereto contained in defendants' answer to plaintiff's demand, satisfied the burden of proof required of plaintiff under the copyright statute; and finally that the Master should have deducted from the total sales price the amount paid by Catalda Company to Lithograph for all the infringing prints purchased by Catalda Company, including those that were not sold,—or $10,072.71.

From all the evidence before him, the Master could reasonably have concluded that the defendants conceded the accuracy of the $4,205.62 as the amount paid for the 9,930 infringing prints actually sold, and this action was not clearly erroneous. Objections 6 and 7 are overruled.

The defendants, in Objection 8, raise the question of whether defendant Catalda Company is entitled to deduct as a credit for cost, the price it paid to Lithograph for all the infringing prints, $10,072.71, or whether, as the Master found, defendant Catalda Company is entitled to deduct only the cost to it for the infringing prints actually sold, based on a per-unit cost price.

The plaintiff here is entitled to recover only for actual profits from the sales it, by proof, is able to establish. It has been established before the Master that only 9,930 of the total number of prints ordered and received by Catalda Company from Lithograph have been sold, and that the total sale prices received by Catalda for these amounts to $17,716.68.

By this objection, defendant Catalda Company seeks to deduct as a cost expense from the total sales price the amount expended by it for the entire number of prints purchased, including those unsold, under an injunction and order for destruction.

Equity allows the plaintiff here to recover profits only on the infringing prints which were actually sold by the infringers, and similarly it limits the credits or deductions allowable to the infringer from costs, to those costs which can be

properly allocated to these infringing prints actually sold. It would be manifestly unjust to allow the defendant Catalda Company to reduce the amount of the plaintiff's recovery by permitting Catalda Company to deduct the total cost to it of all the infringing prints, including those unsold and under Court order, from the total sales price realized by Catalda Company from the infringing prints in fact sold on the market. Accordingly, and consistent with our discussion and rulings on Objections 12 and 13 infra, defendants' Objection 8 is overruled.

▮ Objection 9 is to the failure of the Master to accept the statement of defendant Catalda Company's accountant as to its deduction for cost, and to his failure to require a different form of statement to be furnished, or the accounts or specific items on the statement to be proved by oral examination or by written interrogatories.

On the basis of the testimony and evidence before him, the Master found that the defendant Catalda Company's computations submitted by its accountant did not meet the quantum of proof required by the statute and by the rules. The Master clearly indicates in his report that the defendant Catalda Company, by simply setting up a long list of claimed deductions from gross profits and expecting to have the plaintiff prove them false or untenable, had not carried its burden of showing a proper allocation of the alleged costs contained in the statement by its accountant. In the light of all the evidence, the Master's failure to find, as the defendants suggest by the objection that he ought to have found, was not clearly erroneous and the objection is overruled.

Defendants' next two objections are to the Master's failure to find that the method of allocation of expense incurred by Catalda Company in the sale of infringing prints was conceded by the plaintiff to be proper and was in fact a proper method of allocation (Objection 10), and that the Master, having accepted the method of allocation employed by Catalda Company in respect to certain items of expense claimed by Catalda Company, erred in holding that the defendant Catalda Company had not shown a proper allocation of the several items of expense which the Master disallowed. (Objection 11).

The plaintiff clearly appears to have accepted the method of allocation of expenses advanced by the defendants. The Master noted in his report, "Plaintiff has not challenged the method of percentage allocation of overhead expenses employed by either of the defendants." Objection 10 is overruled.

The objection to the Master's holding that the Catalda Company had not shown a proper allocation of the several items of expense disallowed by the Master is overruled. Having found that the Catalda Company had failed to carry the burden of proof required of it to establish its right to deductions for certain items of expenditure, there was no reason for him to employ the method of allocation which he had accepted and applied to all of the permissible categories of deductions for expenses that he found to be proved before him.

The next objections (Objections 12 and 13) are to the Master's allowance of deductions for cost of the infringing prints to the Catalda Company.

There the defendants contend that the Master erred in allowing Catalda Company as a deduction from the total sales price only a per-unit price for the infringing prints actually sold by it, which unit price was established by the defendant Lithograph upon the manufacture of a total number of 21,040 prints actually manufactured by it and sold to said defendant. It is their further contention that, the Master once having found that Catalda Company was not entitled to deduct the total cost to it of the total number of prints sold to it by Lithograph, should have allowed Catalda Company a deduction from the total sales price of the infringing prints for what it would have cost defendant Lithograph to manufacture the number of infringing prints actually sold, plus the profit which Lithograph would have

charged on the manufacture of said number of prints.

The Master's allowance was computed by multiplying the 9,930 infringers sold by the per-unit price based upon a production order involving 21,040 prints and then subtracting this figure from the conceded total sales price of the infringing prints, $17,716.68. Thus the Special Master allowed a deduction of $4,205.62, leaving Catalda Company with a gross profit of $13,511.06. Catalda Company argues that the deduction should have been the entire purchase price paid by it for all the 21,040 prints delivered to it by defendant Lithograph. To support its contention Catalda Company relies upon Sammons et al. v. Colonial Press, Inc., et al., 1 Cir., 1942, 126 F.2d 341.

The Sammons case, though similar in several respects to the instant action, does not support Catalda Company's contention. There a publisher contracted with a printer for the delivery of 3,000 books at a price of $7,500.00. 2,812 books were delivered by the printer to the publisher. The net invoice amounted to $8,091.92. The publisher sold 2,280 volumes for a total of $18,795.00.

The District Court found the volumes to be infringing and, in arriving at net profits, credited the amount the publisher actually paid to the printer, $6,517.01, against the gross amount received by the publisher from those actually sold. But the opinion does not disclose whether the $6,517.01 that was paid and found to be deductible as a proved cost was for the 2,812 books delivered or for the 2,280 books sold by the publisher. There is not the least indication in the opinion that the Court decided thereby that the publisher was entitled to a credit for the unsold books.

In an action for profits, equity will not permit a credit to an infringer for his costs of manufacture of infringing prints from which, being unsold and under an injunction and order for destruction, the infringer has not and will not realize any profits. The Copyright Act places the burden upon the plaintiff to prove sales, and once sales are proved, then the defendants must "prove every element of cost which [they claim]". Section 101, Title 17 U.S.C.A. (1948 Cumulative Supplement).

It is a cardinal principle in patent and copyright actions that the plaintiff may recover only for actual profits from the sales that he is able by proof to establish. Callaghan v. Myers, 1888, 128 U.S. 617, 664, 9 S.Ct. 177, 32 L.Ed. 547. Similarly, the courts have consistently held that the infringer is accountable only for those profits which may be justly apportioned to the sale of infringing products. (In the Barber Asphalt case, infra, the Court refused to charge the defendant with profits on road asphalt, a non-infringing product, and at the same time declined to credit it with interest on the invested capital necessary to produce the material.) Barber Asphalt Paving Co. v. Standard Asphalt & Rubber Co., 7 Cir., 1928, 30 F.2d 281, 285.

Nor have the courts, in determining profits, been willing to allow the infringer a deduction for the cost of a product sold and then returned as defective. In Duplate Corporation et al. v. Triplex Safety Glass Co., 1936, 298 U.S. 448, 455–456, 56 S.Ct. 792, 80 L.Ed. 1274, the Supreme Court referred to these transactions as "mere futilities". There was no profit from the glass sold, for which the infringer had been charged, but which was subsequently returned by customers because of defects. An infringer who is relieved of any charge by reason of such a transaction was held not entitled to a credit. "The very equities that exact the allowance of a credit where costs are but a means to realizing a profit, exact a different conclusion where profit is impossible." Duplate Corporation et al. v. Triplex Safety Glass Co., supra, 298 U.S. at page 456, 56 S.Ct. at page 795. Furthermore, it is well established that the infringer's profits are generally to be determined by deduction from the selling price of the actual and legitimate manufacturing cost. But where there are no sales, there can be no profits, and there can be nothing to charge against such profits. Callaghan v.

Myers, supra, 128 U.S. 617, at pages 664, 665, 9 S.Ct. 177, 32 L.Ed. 547.

In arriving at this conclusion we do not overlook defendants' objection to the Master's action, once having disallowed a cost deduction of the total amount purchased, in computing the unit cost of those prints actually sold at a per-unit cost based on the total purchase. We do not dispute the thesis that normally the price for a small quantity in a volume purchase will be higher than that of a larger order.

But the defendants here negotiated for the delivery of the larger quantity of infringing prints, taking advantage of a unit price more favorable to them than that price which would be available for a lesser quantity. Were it not for the court restraint and the order to destroy all the infringing photolithographs remaining unsold, defendant Catalda Company's reduced price attributable to the quantity-purchase and now complained of as being too low, would have enabled it to profit more successfully. Defendant Catalda Company cannot seek to reduce the compensation of the plaintiff by seeking now to undo what it did during the period of its wrongful invasion of plaintiff's copyright.

Seven objections have been filed by Catalda Company and Catalda individually to the Master's failure to include in the allocation, and allow as items of expense, certain alleged costs: sales discounts, freight and cartage inward, salesmen's salaries and commissions, commissions to dealers, freight and cartage outward, shipping and packing supplies, and rent. (Objections 14, 15, 16, 17, 18, 19, 20.) Inasmuch as some of the individual objections here are quite repetitious of others, we shall discuss them generally.

With the exception of the freight and cartage inward, and rent, the aforesaid items were disallowed because of the Master's finding that, despite the fact that defendant Catalda Company had had ample opportunity to prove the alleged elements of cost, and that its accountant had admitted such proof could have been furnished even though at some extra cost,

Catalda Company had not offered sufficient proof of the amounts thereof ascribable to the infringing sales.

From all the evidence in the record, it does not appear that Catalda Company would have been put to "an impossible and interminable procedure" so to prove. The proof necessary to relate the disallowed items to the infringing sales appears to have been available. We agree with the Master that neither expense nor difficulty of ascertaining proper proof on all the items enumerated above, save the freight and cartage inward and the rent, justify their being allowed as a deduction for the Catalda Company and thus a charge against the plaintiff.

It should be noted perhaps at this juncture that the sales discounts, freight and cartage outward, salesmen's salaries and commissions, commissions to dealers and shipping and packing are certainly the type of "sales overhead" of expense that would be properly deductible, and our ruling here is not inconsistent with our prior ruling on defendant Lithograph's "selling and administration expenses". Even though we have the same type of expenses involved here which normally might be charged against the infringing sales, the Master's denial of the allowances was based on the insufficiency of Catalda Company's proof of the amounts of these costs ascribable to the infringing sales, and was correct. The objections are overruled.

Plaintiff and defendants have conceded that there was no freight and cartage inward on the delivery to Catalda Company of the infringing prints from Lithograph, and the Master has so found. The objection as to this item is overruled.

The item of rent, however, was denied on a somewhat different basis. The Master disallowed this item on the theory that the defendant Catalda Company had not sustained any increase in rent because of the purchasing and selling of the infringing prints by Catalda Company. This was error and the objection is sustained.

To disallow the item of rent as an element of overhead because of defendants'

admission that the purchase and sale of the infringing prints did not result in an increased payment of rent is clearly erroneous. Sammons et al. v. Colonial Press, Inc., et al., supra, 126 F.2d at pages 350-351. The test is not whether such an overhead item had been increased by the handling of the infringements but whether this overhead item actually assisted in the production of the infringing profits. Sammons v. Colonial Press, supra, 126 F.2d at page 350; Sheldon et al. v. Metro-Goldwyn Pictures Corp. et al., 2 Cir., 1939, 106 F.2d 45, 54. Levin Bros. v. Davis Mfg. Co. et al., supra. As the Court said in the Levin case " * * * this theory of not allowing overhead where it has not been increased is of narrow application and not to be extended for it is manifest that every item of expense which should properly be included in the manufacture and sale of the infringing article should be so included in ascertaining the real profit thereon." 72 F.2d at page 166.

The plaintiff supports the Master's action in disallowing the rent on a somewhat different theory which also will be found to be erroneous. Conceding that rent is a general item of overhead which may be subject to apportionment, the plaintiff proceeds to limit apportionment to those cases where there is a specific showing that the defendants rented the space either in whole or in part in furtherance of the infringing business. The effect of this use of the term would be to limit deductions for rent as overhead to those instances where rent can be definitely ascertained and charged as a direct cost for the particular infringing activity. Such a restriction on over-

head clearly is not contemplated in general accounting usage, nor intended in the cases where the Court has allowed the infringer to deduct the rent as a portion of the general overhead expense. Sammons et al. v. Colonial Press, Inc., et al., supra, 126 F.2d at page 351.

Overhead is ordinarily defined as "those general charges or expenses, collectively, in any business which cannot be charged up as belonging exclusively to any particular part of the work or product, as rent, taxes, insurance, lighting, heating, accounting, and other office expenses and depreciation. * * *" Webster's New International Dictionary (2nd Ed. Unabridged).

The record discloses that the premises rented for which the deduction was disallowed were used both for the infringing and non-infringing business, though no portion was allocated solely for the infringing business. Clearly the precise amount of rent chargeable to the sales of infringing prints was not readily susceptible of proof. The item of rent in this case, however, being an expense which could not be charged up exclusively to any particular sale or sales, infringing or non-infringing, constituted overhead, not direct cost, and therefore was allowable as a deduction to be computed by the same percentage formula employed by the Master in determining the other items allowed here.

The Master's report is modified accordingly. Recomputing the profits chargeable to defendant Catalda Company, and including the items of rent as originally claimed by this defendant, the Court finds the profits of defendant Catalda Fine Arts, Inc., to be $8,481.22.[1]

---

1. Employing the same formula and the same basic data used by the Master in his calculations found in Summaries B-1 to B-6, inclusive, of his report, the Court has increased the expenses allowed by the Master for each of the years or portion thereof, in question, by the amount of the rental claimed by said defendant for the corresponding periods.

Then, dividing the revised allowable expenses for each year or part thereof by the gross sales for the corresponding periods, we redetermine the percentage of gross sales to allowable expenses.

Multiplying the proceeds from the sale of the infringements for each of the periods by the percentage arrived at for that same period, we arrived at the allowable expenses which might be allocated to the infringing sales and deducted from the sales profits.

The subtraction of this revised "allowable expenses" for each period in ques-

416

The next objection (#21) is to the Master's holding that the principles requiring proper allocation of alleged costs to the infringing sale should be especially applicable as to Catalda Company because the stock of said defendant company was owned by one man, defendant Catalda individually. It would seem that the fact that the policies and affairs of Catalda Company were directed by one man is a factor which the Master might weigh with the other evidence in determining the extent to which the Catalda Company should be required to provide proof relating its claimed items of expense to the infringing sales. The Master's consideration of the ownership factor was not clearly erroneous. The objection is overruled.

In the defendants' Objection 22, the Master's disallowance of Catalda Company's item of rent is objected to again, but this time for the primary reason which led us to overrule him on the rent expense earlier in this opinion. We have set out at some length above the Master's error: denying the rental item because it did not appear that any additional space requirements were imposed by the purchase and sale of the infringing prints. This objection is sustained.

Objections 23 and 24 are covered by what we have said in the other parts of this opinion in ruling on the allowance of income taxes, and are overruled without further comment.

The defendants have filed four objections (Nos. 25, 26, 27, 28) to the Master's findings relating to the liability of the defendant Catalda individually for salary and compensation received from Catalda Company, and to the failure of the Master to allow Catalda individually a deduction of income taxes paid by him in the several calendar years involved, in the proportion

tion from the sales profit for the same period afforded the net profit from each period of infringing chargeable against defendant Catalda Company.

A comparison of the following table with the Master's computations will reveal the amount of change caused by the alowance of the rental items:

Allocation of Allowable Expenses to Infringing Sales Based Upon the Proportion of Gross Sales to Over-all Allowable Expenses and Recomputation of Profits Including Allowance for Items of Rent

| | Gross Sales | Expenses Allowed by Master,— Plus Rent | % of Gross Sales to Allowable Expenses, Including Rent | Total Proceeds From Infringing Sales | Allowable Expenses |
|---|---|---|---|---|---|
| 1943 | $ 53,844.13 | $13,178.95 | .2447 | $3,546.35 | $ 867.79 |
| 1944 | 205,527.50 | 59,217.50 | .2881 | 2,471.04 | 711.91 |
| 1945 | 232,007.80 | 68,677.08 | .2960 | 4,597.09 | 1,360.74 |
| 1946 | 315,007.03 | 80,440.40 | .2553 | 4,006.06 | 1,022.75 |
| 1947 | 175,600.00 | 58,240.24 | .3316 | 3,096.04 | 1,026.65 |

| | Sales Profit (Total Sales Price Less Cost Paid to Lithograph) | Less Allowable Expense | Net Profit (Chargeable against Defendant Catalda Co.) |
|---|---|---|---|
| 1943 | $2,802.61 | $ 867.79 | $1,934.82 |
| 1944 | 1,881.59 | 711.91 | 1,169.68 |
| 1945 | 3,510.18 | 1,360.74 | 2,149.44 |
| 1946 | 2,995.63 | 1,022.75 | 1,972.88 |
| 1947 | 2,281.05 | 1,026.65 | 1,254.40 |

Total Profits $8,481.22
Chargeable Against
Defendant Catalda Fine Arts, Inc.

that the profits derived by him from the infringing prints bore to his total income in each such calendar year, and to the Master's further failure to give the defendant Catalda individually an opportunity to prove the amount of such deduction.

█ Catalda individually made no sales, but did profit from the sales of Catalda Company. In view of his sole ownership and the Master's findings re the handling of the company's earnings, he may well be charged with the amount of his individual receipts which represent return on the infringements, particularly since we are allowing a deduction to the company on those amounts as business expense.

Retention of such return from infringements would open too easy a road for evasion of the corporate responsibility. Objections 25, 26, and 27 are overruled.

His individual income tax should be allowed as a deduction, however, and for the same reasons discussed earlier that justified the allowance of such a deduction to the corporate defendants. Since it does not appear that we can determine this from the evidence before the Master, the defendant Catalda individually may be permitted to file an affidavit showing the net income returned by him for each year in question, the amount of tax paid, and allowed a deduction from profits of the proportion of profit from infringement to total net income, times the total tax paid. Accordingly, Objection 28 is sustained.

█ The defendants have objected further to the use of the fractional years in 1943 and 1947 for the purpose of computing the allocations of allowable expense to gross profits derived from the sale of the infringing prints during said calendar years. (Objections 29 and 30). There was evidence before the Master to the effect that the Catalda Company's order for the infringing prints was placed in May of 1943, and that the sales of the infringements commenced in October of that year and ended in October, 1947. By these objections the Catalda Company seeks to obtain an allocation of allowable expense to gross profits which would include portions of those years unrelated to this accounting. The Master was

right in employing only the fractional years in 1943 and 1947 during which the infringing sales ensued. Objections 29 and 30 are overruled.

Objections 31 to 38 inclusive are to the dollar amount of recoverable profits allowed by the Master for each year or each fractional year against defendants Catalda Company and Catalda individually. Essentially these objections are nothing more than objections to the conclusions from facts found by the Master and the law he subsequently applied. Except insofar as the recoverable profits for each year or fractional year may be modified in accordance with our rulings in this opinion, Objections 31 to 38 inclusive are overruled.

By their next series of objections 39 to 44 inclusive, the defendants Catalda Company and Catalda individually challenge the Master's allowance of $7,500.00 to the plaintiff for counsel fees and the Master's finding that $1,500.00 represents a reasonable compensation for the services rendered by the plaintiff's counsel on the discovery proceedings. These objections have been fully covered supra in our rulings on defendant Lithograph's objections to the allowances for counsel fees and are thus overruled in conformity with our prior remarks.

Defendants Catalda Company and Catalda individually have raised objections (Nos. 45, 46, 47) to the Master's failure to find: that the plaintiff suffered no damages, that the infringed prints did not contribute solely and exclusively to the production of the profits derived by the defendants, severally and jointly, and that the defendants should be held to account for no more than twenty per cent of the net profits derived by them from the sale of the infringing prints. Substantially the same objections were raised by the defendant Lithograph and the bases of our rulings thereon still obtain. Objections 45, 46 and 47 are overruled.

Defendants' last two objections, Nos. 48 and 49, are to the finding of the Master that defendant Catalda Company paid something over $13,000.00 as and for counsel fees for their own counsel in this litigation, and to the further finding that the payment of something over $13,000.00 by said de-

fendant is a factor in the propriety of the allowance to be made by the Master for plaintiff's counsel fees. It does not appear that the Master made any specific finding as to that amount: rather, it would seem that he merely commented· that the appearance of the professional expenses sustained by Catalda Company in this litigation was "not without significance", in considering the propriety of this allowance.

 Perhaps it would have been error, on the basis of the testimony and evidence presented, for the Master to find that Catalda Company paid something over $13,000.00 as and for counsel fees for its own counsel in this litigation. There is, however, no question but that the Master was entitled to consider generally the fee sought by defendant Catalda Company's counsel in the litigation. Hartfield v. Peterson, 2 Cir., 1937, 91 F.2d 998, 1001. Considering that the fee was as claimed by the defendants, the amount allowed, $7,500.00 is not excessive. Objections 48 and 49 are overruled.

### Objections of the Plaintiff
### Alfred Bell & Co., Ltd.

The plaintiff has filed objections to the Master's findings with respect to the allowance of deductions for income taxes to defendants Lithograph and Catalda Company, and to the Master's allowance of counsel fees, alleged by the plaintiff to be inadequate.

 ·The plaintiff, in objecting to the allowance of any income tax deductions to the above-named defendants, contends that·these defendants were not innocent infringers, and irrespective of whether or not the infringements were "deliberate or intentional", such deductions should not be allowed. In determining whether or not an infringer should be allowed a deduction for income taxes, the Courts, have, as plaintiff contends, seemingly drawn the line of demarcation as between an innocent infringer, on the one hand, and the deliberate, conscious wrong-doer on the other. L. P. Larson Jr., Co. v. Wm. Wrigley, Jr., Co., 1928, 277 U.S. 97, 48 S.Ct. 449, 72 L.Ed. 800; Sheldon et al. v. Metro-Goldwyn Pictures Corporation et al., supra. Shel-

don et al., v. Moredall Realty Corporation, D.C., 1939, 29 F.Supp. 729.

This is an objection covered largely by what we said earlier in the general discussion, but perhaps merits further elaboration. The nature of the infringement here,. though certainly conscious, as we have found, but being open and under a good-faith claim of a right to copy, based upon the alleged invalidity of the plaintiff's copyright, is distinguishable from those cases where the infringement was deliberate and without any good-faith assertion of such a defense. Certainly the defendants should be assessed for the costs of this deliberate test, and they have been so assessed with the costs of plaintiff's attorneys' fees covered earlier in this opinion. It would seem unduly harsh, however, in light of the claimed invalidity of the plaintiff's copyright to deny the right of the defendants ·so to test without being penalized on the accounting with what appears to be a severe additional penalty. ·

The Supreme Court, in denying to the accounting party, any deduction for federal taxation in L. P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co., supra, noted significantly, we think, that "No doubt there are cases in which such a deduction would be proper. * * * Circumstances will affect the conclusion, including in them the knowledge and the conduct of the party charged." 277 U.S. 97, 99, 100, 48 S.Ct. 449. We think the instant case is just the type of situation that the Supreme Court had in mind when it noted the aforesaid reservation in L. P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co., supra.

 Neither the conduct of · the defendants nor the nature of the offense is of sufficient gravity to warrant the imposition of the additional penalty of disallowance of the income tax deductions here. Cf. Stromberg Motor Devices Co. v. Zenith-Detroit Corp., supra. We are of the opinion that the defendants' honest belief in their right so to reproduce the prints found to be infringing here was sufficiently shown to entitle them to a deduction for income taxes paid, leaving them accountable to the plaintiff only for the profits of which they actually have had the benefits. Strom-

berg Motor Devices Co. v. Detroit Trust Co., 7 Cir., 1930, 44 F.2d 958, 965. This objection is overruled.

The second and final objection by the plaintiff to the Master's report is as to the Master's allowance of $7,500.00 for plaintiff's attorneys' fees in this case, exclusive of the proceedings on discovery. The plaintiff contends that such an allowance is inadequate and should be increased to the sum of $17,000.00.

This objection is covered by what we have said in the general discussion early in the opinion and reiterated once again in commenting on defendant Lithograph's objection. Except for the addition of $250.00 for plaintiff's counsel's services on these objections, which has been allowed supra, we cannot conclude that the Master's allowance was inadequate. The Master's allowance was reasonable and not clearly erroneous. The total amount to be assessed the defendants jointly and severally, for plaintiff's attorneys' fees, excluding counsel's services on the discovery proceedings, is fixed at $7,750.00.

Allowance for the Special Master

■ The Special Master has reported his services as follows: (a) four days of hearings; (b) consideration of a series of briefs on the law and on computations as to deductions claimed by the defendants from the gross profits, resulting in the determination of a series of issues for or against these deductions; and in all, including the preparation of his report, one hundred and fifty-two hours on the case. The value of a Master's services cannot be determined with mathematical accuracy, and though salaries prescribed for judicial officers performing similar duties are valuable guides, the Courts generally have allowed a higher rate of compensation as necessary in order to secure ability and experience in an exacting and temporary employment which often seriously interferes with other undertakings. Newton v. Consolidated Gas Co., 1921, 259 U.S. 101, 105, 42 S.Ct. 438, 66 L.Ed. 844.

■ The Master's total allowance is fixed at $1,920.00, which the defendants, jointly and severally, are ordered to pay within thirty days after the entry of a final decree herein.

The judgment will allow recovery against Lithograph of its profits in the amount of $1,066.77, against Catalda Company of its profits in the amount of $8,481.22, and against Catalda individually of his profits in the amount of $1,268.20, less the amount of an income tax deduction to be determined in accordance with the formula suggested in this opinion; in addition, against all three defendants, jointly and severally, of attorneys' fees in the total amount of $7,750.00, together with the costs of this action, including the Master's fees.

The Interlocutory Decree, as amended, consistent with this opinion, may be entered as a final judgment. Submit a decree in in accordance with this opinion on two days' notice.